[No. B164169. Second Dist., Div. Four. Dec. 30, 2003.]

THEODORE B. STOLMAN, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Overton, Lyman & Prince and Stephen L. Jones for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Jeri L. Burge, Assistant City Attorney, Ingrid M. Causey and Thomas Ballantine, Deputy City Attorneys, for Defendant and Respondent.

OPINION

**VOGEL (C. S.), P. J.—**

## INTRODUCTION

This appeal concerns the issuance of a variance to permit a nonconforming use. The variance issued by the City of Los Angeles (City) would permit Brian Clark, the owner of Canyon Service and Detail, a gasoline station located in a residential zone which has a nonconforming use, to expand the station's existing operations to include an automobile detailing service. After the zoning administrator granted the variance and her findings were affirmed by the area planning commission and the City Council, appellant, Theodore Stolman, filed a petition for writ of mandamus,[1] seeking to overturn the granting of the variance.

The superior court denied the writ petition. Stolman appeals, contending that the variance should not be granted because Clark failed to meet two of the five requirements for the granting of a variance. He asserts that there is no showing of hardship. Stolman further contends that Clark has not shown that he is deprived of a use afforded to other properties in the same zone and vicinity. We agree. We conclude that the zoning administrator abused her discretion in granting the variance, because the above two findings were not justified based on the evidence before her. We therefore reverse the trial court's denial of the writ petition and remand the matter to the trial court with directions to grant the writ of mandamus and direct the zoning administrator to deny the variance without condition.

## FACTUAL AND PROCEDURAL BACKGROUND

Clark began leasing the gasoline station located at 507 Entrada Drive in 1996. The station is just north of Pacific Coast Highway in the Santa Monica Canyon. Stolman has lived near the station for approximately 20 years. The gasoline station has been in operation since 1922. In 1925 the property was annexed to the City of Los Angeles and zoned "R1-1," which allows single family residences only. Commercial businesses, such as gas stations, are not permitted.[2] The station has been a nonconforming use since 1925. Pursuant to a series of nonconforming use grants, the most recent of which was issued in 1991, Clark has been permitted to sell gasoline and perform limited services such as changing tires and windshield wipers.

---

[1] Clark owned the station but leased the land where the station is located from someone else. Clark and the owner were named but did not appear in this action and are not parties to this appeal.

[2] There is also a small house on the property.

In 1996 Clark began detailing automobiles. Also in 1996, the owner of the property invested $144,000 to install new double-lined underground gasoline storage tanks. The City cited Clark in 1997 for operating an unlawful car wash. Clark paid to refurbish the gasoline station in 1998.

### The Granting of the Variance by the City

In January 1999, Clark filed an application with the City for a variance from section 12.08(A) of the Los Angeles Municipal Code to permit the addition of an automobile detailing service to an existing gasoline station which has a nonconforming use status and which is located in a R1-1 zone. A public hearing was held in April 1999 before an associate zoning administrator. In June 2000 the zoning administrator approved the variance. Her decision was accompanied by findings of fact and numerous conditions of approval.

Stolman appealed the zoning administrator's decision to the West Los Angeles Area Planning Commission (APC). The APC held a public hearing in September 2000. It subsequently denied the appeal, upholding the zoning administrator's decision to grant the variance. The APC issued more stringent conditions and limitations on the operation of the detailing service. Stolman appealed the APC's determination to the Planning and Land Use Management Committee (PLUM). PLUM held a public hearing in May 2001.

The City Council held a public hearing in May 2001. Clark submitted supplemental findings including examples· of similar uses approved by the City. This included one gasoline station permitted to expand its operation to include a convenience store on property zoned R3-1 in Eagle Rock. The other examples included property located in various other parts of the City. None of the properties was located in the same neighborhood as the gasoline station on Entrada Drive. Only one property was zoned R1-1.

The City Council adopted the zoning administrator's report and findings and affirmed the granting of the variance.

### The Petition for Administrative Mandamus Filed in the Trial Court

Stolman filed this action for administrative mandamus to set aside the City's approval of the variance. The matter was heard by the trial court in November 2002.

The trial court denied the petition for writ of mandamus after considering the petition, the opposition, the reply, and oral argument and after taking into

evidence the administrative record and matters of judicial notice. At the hearing the court stated that Clark would not go to the expense of setting up an automobile detailing operation if he was already making a reasonable profit by selling gasoline.

In an order issued in November 2002, the trial court stated in pertinent part as to the first required finding: "[S]trict application of the zoning rules here would require that the station cease to provide any commercial services whatsoever. As it is, although the extent of the gas station's commercial operation is limited by the residential zoning of the lot and its non-conforming use approval, the station still has to comply with all laws applicable to commercial businesses and gasstations. This results in practical difficulties and unnecessary hardship to [real parties in interest (RPI's)] if they can only sell gas."

As to the second required finding, the trial court stated in pertinent part: "[Stolman] contends that [City] did not properly interpret the requirements for this finding because [City] determined that the 'same zone and vicinity' means only the immediate neighborhood, but went on to compare this variance application to parcels in other areas of the City, which makes the 'same zone and vicinity' requirement superfluous.[3] [¶] There is no particular inconsistency here. [¶] [City] found that the service station has been on the site for 80 years, and it has not been developed with a single-family residence 'as are others in the <u>immediate</u> zone and vicinity. This is a condition which does not apply to other property in the <u>same</u> zone and vicinity' (underscore added).

"As regards 'special circumstance,' [City] determined that there are special circumstances applicable to this lot because the other lots in the <u>immediate</u> vicinity (as opposed to 'same vicinity') are in fact developed with residences as opposed to established service stations. In addition, special circumstances may be determined by looking at 'disparities' between properties, the application of laws and regulations can be considered as creating a special circumstance, and a parcel need not have special physical properties for a special circumstance to exist. [Citations.] Here, the residences around the service station are not subject to the same federal, state, etc. laws and regulations that govern the station. This constitutes a special circumstance applicable to the station but not the surrounding residences. In addition, the property has the special circumstance of being the only commercial property in the immediate area, and has existed as such for over 80 years.

---

[3] Stolman does not challenge the validity of the second, fourth, or fifth findings. We discuss the second finding because the trial court's determination as to the third finding, which Stolman does challenge, is based in part on its determination of the second finding.

"As regards 'same zone and vicinity' (which is not defined in the [municipal code]), [City] determined that the circumstance of a non-conforming 80 year old service station in a residentially zoned area does not apply generally to other uses on residential zoned lots (same zone) within the City (same vicinity), and determined that the variance would allow the service station to have parity with the other such use."

Regarding the third required finding, the trial court stated in pertinent part: "The reasons supporting the second finding, *supra*, regarding 'same zone and vicinity' and 'special circumstances' also support this finding. In addition, grant of the variance allows RPI's to make beneficial use of the substantial property right to operate the business . . . as the neighbors are able to make beneficial residential use of their properties. Without the variance, the service station will not be able to stay afloat."

The trial court entered judgment denying the writ petition on November 12, 2002.

Stolman appealed the decision of the trial court.

## DISCUSSION

### *The Standard of Review as to the Determination of the First Critical Required Finding*

" '[I]n an administrative mandamus action where no limited trial de novo is authorized by law, the trial and appellate courts occupy in essence identical positions with regard to the administrative record, exercising the appellate function of determining whether the record is free from legal error. [Citations.]' (*Honey Springs Homeowners Assn. v. Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1135, fn. 10 [203 Cal.Rptr. 886].) Thus, the conclusions of the superior court, and its disposition of the issues in this case, are not conclusive on appeal. (*Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892])" (*Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1160 [227 Cal.Rptr. 688].)

"[A] reviewing court, before sustaining the grant of a variance, must scrutinize the record and determine whether substantial evidence supports the administrative agency's findings and whether these findings support the agency's decision. In making these determinations, the reviewing court must resolve reasonable doubts in favor of the administrative findings and decision.

"Our analysis begins with consideration of Code of Civil Procedure section 1094.5, the state's administrative mandamus provision which structures the

procedure for judicial review of adjudicatory decisions rendered by administrative agencies. . . . Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. . . . [W]hen petitioned for a writ of mandamus, a court's inquiry should extend, among other issues, to whether 'there was any prejudicial abuse of discretion.' Subdivision (b) [of section 1094.5] then defines 'abuse of discretion' to include instances in which the administrative order or decision 'is not supported by the findings, *or* the findings are not supported by the evidence.' (Italics added.) Subdivision (c) declares that '*in all . . . cases*' (italics added) other than those in which the reviewing court is authorized by law to judge the evidence independently, [fn. omitted] 'abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' (See *Zakessian v. City of Sausalito* (1972) 28 Cal.App.3d 794, 798 [105 Cal.Rptr. 105] . . . .)" (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515 [113 Cal.Rptr. 836, 522 P.2d 12].)

"*Topanga* makes it clear that despite the applicability of the substantial evidence rule and the deference due to the administrative findings and decision, judicial review of zoning variances must not be perfunctory or mechanically superficial. ' Vigorous and meaningful judicial review facilitates, among other factors, the intended division of decision-making labor [in land-use control]. Whereas the adoption of zoning regulations is a legislative function (Gov. Code, § 65850), the granting of variances is a quasi-judicial, administrative one. [Citations.] If the judiciary were to review grants of variances superficially, administrative boards could subvert this intended decision-making structure. [Citation.] They could "[amend] . . . the zoning code in the guise of a variance" [citation], and render meaningless, applicable state and local legislation prescribing variance requirements. [¶] Moreover, courts must meaningfully review grants of variances in order to protect the interests of those who hold rights in property nearby the parcel for which a variance is sought. A zoning scheme, after all, is similar in some respects to a contract; each party forgoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare. [Citations.] If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests. [¶] Abdication by the judiciary of its responsibility to examine variance board decision-making when called upon to do so could very well lead to such subversion. . . . Vigorous judicial review . . . can serve to mitigate the effects of insufficiently independent decision-making.' ([*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11

Cal.3d 506 at pp. 517–518, fn. omitted.)" (*Orinda Assn. v. Board of Supervisors, supra,* 182 Cal.App.3d 1145, 1161–1162.)

*The First Critical Required Finding Is Not Supported By
Substantial Evidence*

Section 98(2) of the former City Charter of Los Angeles and section 12.27(D)(1) of the Los Angeles Municipal Code authorize the granting of a variance if each of the following findings is made: "1. that the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulations; [¶] 2. that there are special circumstances applicable to the subject property such as size, shape, topography, location or surroundings that do not apply generally to other property in the same zone and vicinity; [¶] 3. that the variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by other property in the same zone and vicinity but which, because of the special circumstances and practical difficulties or unnecessary hardships, is denied to the property in question; [¶] 4. that the granting of the variance will not be materially detrimental to the public welfare, or injurious to the property or improvements in the same zone or vicinity in which the property is located; and [¶] 5. that the granting of the variance will not adversely affect any element of the General Plan."

Because Stolman only challenges the first and third required findings on appeal here, we address these findings first.

The APC adopted the findings of the zoning administrator and made no independent supplemental findings. Regarding the first required finding, the zoning administrator considered the historical use of the property and both previous and current zoning related actions. The administrator reasoned, "The nonconforming nature of the use coupled with the underlying zone limit the applicant's ability to provide a service which would enhance the continued viability of the gas station. While the use is limited in its commercial usage by the R1 zoning, it is not exempted likewise from observance or compliance with government regulations applicable to similar commercial facilities. Since the public hearing, the gas station was closed for a number of months while undergoing costly gas tank improvements to meet federal regulations. The limited nature of the permitted gas station activities does create a practical difficulty and unnecessary hardship which can be evaluated in the context of the Municipal Code's desire to achieve compatibility between respective sites. The location of a gas station next door to a residential use is not an unusual circumstance. Examples of this type of development are found routinely throughout the City. In most instances, the gas station is located on

a commercial zone but the impact of its adjacency to a residential use, often to a single-family use is not diminished by the segregation of zones. Most of these gas stations provide services which are far more intensive and maintain hours which are substantially longer than those of the subject use. That the variance procedure is not to be used to grant a special privilege is a correct assertion by those who opposed the request. The variance procedure is a means by which to remedy a disparity of privileges. Likewise it is not the purpose of the Code to create a situation which impedes the continued viability of a use by prohibiting a modification to a use which can be accommodated in a manner consistent with the purpose and intent of the zoning regulations."

Stolman contends that the finding that strict application of the zoning ordinance provisions would result in "practical difficulties" or "unnecessary hardships" cannot be met. Of these two terms, the "essential requirement is 'unnecessary hardship.' " (*Zakessian v. City of Sausalito, supra,* 28 Cal.App.3d 794, 799.) The term "hardship" is not defined in the zoning ordinance. (L.A. Mun. Code, §§ 11.01, 12.02.) Various courts have considered hardship in terms of economics. (See, e.g., *Zakessian, supra,* 28 Cal.App.3d at 802.)

City contends that the trial court correctly found that Stolman "failed to raise the contention in the administrative proceedings that the evidence presented concerning Appellant's financial hardship was insufficient," and thus Stolman failed to exhaust his administrative remedies regarding this issue. According to City, Stolman cannot challenge the evidence presented at the zoning hearing that, absent the variance, Clark cannot use the property in a manner that enables him to recover the station's operating expenses. City's argument is unmeritorious. In actuality, the trial court found that: (1) Stolman could not assert that Clark had the burden of showing that it is impossible for the gasoline station to yield a reasonable return without the adjunct automobile detailing operation and (2) Clark failed to meet this burden. Regardless, as explained, *ante,* the proper analysis on appeal is to review the zoning administrator's findings and thus the city's determinations do not factor into our analysis. Moreover, Stolman and his supporters did attack the insufficiency of the evidence of hardship during the administrative proceedings. First, the zoning administrator's report stated that a resident had asserted that no hardships or facts had been shown. Second, at the hearing before the APC, Stolman's attorney pointed out the lack of evidence in the record to support Clark's assertion that the gasoline station would go out of business if the variance was denied. According to Stolman's counsel, his requests for copies of the gasoline station's financial records were denied. Third, the APC's report indicated that speakers and letters in support of Stolman's appeal stated that no records showed that automobile detailing was necessary for the station to be a viable operation. Lastly, Stolman stated during the City

Council meeting that Clark told him that he probably generated enough revenue from just selling gasoline to pay the rent. Clark also told Stolman that he was an entrepreneur looking to expand his income-generating opportunities.[4]

The key question is whether the detailing operation enhances the continued viability of the gasoline station to the extent that Clark would face dire financial hardship without the variance, or whether Clark merely wants the variance in order to increase his existing profits from the sale of gasoline.

City asserts that financial hardship may constitute "unnecessary hardship." Even assuming that this is true, the zoning administrator's determination of the first required finding is erroneous. The evidence in the record is insufficient to support a finding of financial hardship. While Clark stated that he made a profit of eight cents per gallon of gasoline sold, he does not explicitly tell us how many gallons were sold or whether the profit was net or gross. Most fundamentally, he provides no information from which it can be determined whether the profit is so low as to amount to "unnecessary hardship."

More than one person testified that Clark wanted the variance so that the business could not just survive, but earn even more money. "If the property can be put to effective use, consistent with its existing zoning [and nonconforming use grant] without the deviation sought, it is not significant that the variance[] sought would make the applicant's property more valuable, or that [it] would enable him to recover a greater income . . . . (*Broadway, Laguna etc. Assn. v. Board of Permit Appeals* (1967) 66 Cal.2d 767, 775 [59 Cal.Rptr. 146, 427 P.2d 810].)" (*Hamilton v. Board of Supervisors* (1969) 269 Cal.App.2d 64, 67 [75 Cal.Rptr. 106].) As explained above, there is no evidence demonstrating that the property cannot be put to effective use as a gasoline station without the automobile detailing operation. Accordingly, there may be no unnecessary hardship if Clark is seeking the variance in order to increase his already existing profits from the sale of gasoline. (*Cow Hollow Improvement Club v. Board of Permit Appeals* (1966) 245 Cal.App.2d 160, 179–180 [53 Cal.Rptr. 610].)

Although the zoning administrator based its decision in part on the fact that costly new gasoline tanks were installed, Clark did not pay for these tanks. City impliedly admits this in its respondent's brief, but claims that this argument is "superfluous" because the evidence purportedly showed that the property owner could only recover her costs if the gasoline station stayed in business. City, however, provides no record citations in support of this

---

[4] Stolman's statements were corroborated by a neighbor who testified at the APC hearing.

contention. Its cursory argument on this point, unsupported by citations to the record, is clearly deficient. "[S]tatements of fact contained in the briefs which are not supported by the evidence in the record must be disregarded. [Citations.]" (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 [282 Cal.Rptr. 330].)

Even if City's argument is considered, it is still unmeritorious. ■ As explained above, the evidence in the record is insufficient to establish that Clark would cease to operate the gasoline station if the variance was denied. Notably, the property owner paid for the installation of the underground storage tanks *before* Clark applied for the variance. Thus, the operation of the gasoline station was likely going to continue regardless of whether the variance was granted. As such, the payment of the underground storage gasoline tanks does not create a situation of unnecessary hardship.

City also contends that Clark spent money refurbishing the gasoline station, but it provides no helpful supporting record citations. The only record citation provided by City is to a "Planning and Land Use Management Committee Hearing Outline." This outline of various arguments was apparently prepared by Clark's attorney. It does not constitute competent evidence in support of City's contention. The outline merely mentions City's contention. It contains no concrete details such as how much money Clark spent on remodeling. We find that this is insufficient evidence of unnecessary hardship.

■ Given the lack of sufficient evidence of unnecessary hardship, the zoning administrator's first finding is untenable. She abused her discretion in making this finding. Because failure to prove any of the matters required by the ordinance must result in a denial of the variance application (*City of San Marino v. Roman Catholic Archbishop* (1960) 180 Cal.App.2d 657, 671–672 [4 Cal.Rptr. 547]), she should have denied the application for a variance.

*The Standard of Review for the Determination of the Third Critical Required Finding*

In addition to the first finding, Stolman challenges the third finding "that the variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by *other property in the same zone and vicinity* but which, because of special circumstances and practical difficulties or unnecessary hardships, is denied to the property in question" on appeal. (Italics added.)

■ Stolman's challenge to the third finding concerns the definition of the phrase "in the same zone and vicinity" in section 98(2) of the former City Charter and section 12.27(B)(1) of the Los Angeles Municipal Code.

Courts interpret ordinances in the same way as they construe statutes. (*Anderson v. San Francisco Rent Stabilization & Arbitration Bd.* (1987) 192 Cal.App.3d 1336, 1343 [237 Cal.Rptr. 894].) Ordinarily, questions of law such as interpretation of an ordinance are subject to de novo review. (*Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1096 [102 Cal.Rptr.2d 684].) City contends that the zoning administrator's interpretation of the ordinance should be given great weight and substantial deference. (*Anderson, supra,* 192 Cal.App.3d at p. 1343.) " 'While an administrative interpretation . . . will be accorded great respect by the courts and will be followed if not clearly erroneous' " the court has the duty " ' "to state the true meaning of the statute finally and conclusively," ' notwithstanding the agency construction. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6–7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)" (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1266, fn. 6 [93 Cal.Rptr.2d 725].) We may, therefore, consider the zoning administrator's interpretation, but we are not bound by it.

*The Third Critical Required Finding Cannot Be Made*

Regarding the third finding, the zoning administrator stated that "the *subject use in the R1 Zone is unique in the immediate area.* Citywide, however, numerous examples exist of gas stations which exist on zones where they are not permitted by right but on which they are able to operate pursuant to approvals of variances, nonconforming rights cases or other discretionary actions. The grant allows the applicant to have a viable use of the property and to have some parity which otherwise is limited due to this individual set of circumstances." (Italics added.)

Stolman contends that this finding cannot be made because there is no other comparable property "in the same zone and vicinity" as the gasoline station on Entrada Drive. We agree.

■ The words "zone" and "vicinity" are not defined in the ordinance. (L.A. Mun. Code, §§ 11.01, 12.03.) The Municipal Code provides that words and phrases not specifically defined in the code "shall be construed according to the context and approved usage of the language." (L.A. Mun. Code, § 11.01(b).) The term "zone" means "one of the sections of an area or territory created for a particular purpose." (Merriam-Webster's Collegiate Dict. (1995 ed.) p. 1377.) The term "vicinity" means "1: the quality or state of being near[;] proximity[;] 2: a surrounding area or district[;] neighborhood." (*Id.,* p. 1316.) Taking into account the proper context of the phrase, the rights and usage generally possessed by other property in the same zone and vicinity, and the dictionary definition of the terms "zone" and "vicinity," we find that other properties considered for the purpose of making

the third required finding should be zoned the same and be located in the same geographic area. The zoning administrator's finding is based upon an absurd interpretation of the phrase "same zone and vicinity." Recognizing that there are no comparable properties in the "immediate area," she based her comparison upon other similarly situated properties located throughout the City where businesses are permitted to operate pursuant to variance approvals. Thus, the zoning administrator's interpretation of the phrase "same zone and vicinity" completely ignores the term "vicinity." Fairly read, a parcel of property in the "same zone and vicinity" as the gasoline station on Entrada Drive cannot mean a parcel of property anywhere in Los Angeles. The City of Los Angeles is well over four hundred square miles in size. The gasoline station on Entrada Drive should not be compared to other properties potentially located 20 or more miles away. ■ If, as here, there is no evidence of any comparable properties within reasonably close proximity of Entrada Drive, the third finding cannot be made and the variance should be denied.

Clark submitted supplemental findings including examples of six properties located in various parts of Southern California, and not just the City of Los Angeles, to the City Council. His submission is too little, too late. None of the properties is located in the same vicinity as the gasoline station on Entrada Drive. Only one of the six properties is zoned R1-1. The most similar property listed, a gasoline station in Eagle Rock, where a variance was sought in order to add a convenience store, is over 19 miles away from the gasoline station on Entrada Drive in Santa Monica. Thus, it is not only a reach but is an irrational stretch.[5]

City's reliance on *Miller v. Board of Supervisors* (1981) 122 Cal.App.3d 539 [176 Cal.Rptr. 136] (*Miller*) is misplaced. In that case the Marriott's Santa Barbara Biltmore Hotel (Biltmore) sought a variance in order to expand and renovate its facilities pursuant to section 65906 of the Government Code. Section 65906 "has three elements: (1) there must be special circumstances applicable to the property; (2) by reason of which the strict application of the zoning ordinance would deprive such property of privileges enjoyed by other property in the vicinity under identical zoning classification; and (3) any variance granted shall be subject to such conditions as will assure that the adjustment is not a grant of special privileges inconsistent with the limitations upon other properties in the *vicinity and zone* in which the property is located." (*Miller*, at p. 544, italics added.)

---

[5] City's contention that Stolman waived his objections to the supplemental findings by not raising them at the administrative or the trial level is misleading. Clark waited until after the hearings of the zoning administrator and the APC had taken place before submitting the supplemental findings. Stolman obviously could not have objected to those findings before they were submitted. Moreover, in his petition for writ of mandamus Stolman contended that the supplemental findings referred to properties in different zones and vicinities.

The board found that the Biltmore and its competitor, the Miramar Hotel, are under the same zoning classification. The *Miller* court reasoned that, with respect to the third requirement of not providing the Biltmore with special privileges denied to other properties in the same vicinity and zone, "[i]f a variance is granted it must be on conditions which give the applicant substantial parity with other owners in the zone rather than a special privilege better than that enjoyed by its neighbors. (*Hamilton v. Board of Supervisors, supra,* 269 Cal.App.2d at p. 66 [75 Cal.Rptr. 106].)" (*Miller, supra,* 122 Cal.App.3d at 548.) The court went on to compare the Biltmore to the Miramar. In its respondent's brief, City relies on this comparison as support for its argument that similarly situated properties should be compared instead of properties in the same "immediate neighborhood." We find that *Miller* is distinguishable from the present case. In *Miller,* the properties clearly are located near to each other and there is no indication that any argument was made that the Biltmore had to be compared with other properties in the same immediate neighborhood. While the two hotels are not located on the same street, a map of the area of which judicial notice was taken by the trial court here shows that they are less than one mile apart from each other. This is a far cry from the present situation where the most analogous property cited is in Eagle Rock, over 19 miles away from the gasoline station on Entrada Drive in Santa Monica.

Even if we give due consideration to the zoning administrator's construction of the third required finding, we still conclude that her decision was erroneous. As one court explained, "an agency's interpretation of a regulation or statute does not control if an alternative reading is compelled by the plain language of the provision." (*Southern Cal. Edison Co. v. Public Utilities Com., supra,* 85 Cal.App.4th 1086, 1105.) The zoning administrator's interpretation of the third required finding contradicts the plain language of the provision and cannot stand undisturbed.

Because we conclude that the first and third required findings made by the zoning administrator were erroneously made, and the zoning administrator therefore abused her discretion in granting the variance, we need not discuss the other three findings required by the ordinance.

## DISPOSITION

We reverse the judgment. The trial court is directed to grant Stolman's petition for a writ of mandamus and require that the zoning administrator vacate her order awarding a variance. Appellant is awarded costs on appeal.

Epstein, J., and Curry, J., concurred.

A petition for a rehearing was denied January 15, 2004.