Filed 3/18/15; pub. order 4/15/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WALNUT ACRES NEIGHBORHOOD ASSOCIATION et al., | B254636 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BS139318) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants, | |
| JOHN C. SIMMERS et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

Alston & Bird, Edward J. Casey and Andrea S. Warren for Real Parties in Interest and Appellants.

Law Offices of Mark Shipow and Mark S. Shipow for Plaintiffs and Respondents.

* * * * * *

"Unnecessary hardship" is a term of art generally used in the context of evaluating a zoning variance. For example, under the Los Angeles Municipal Code, no variance may be granted unless "'the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulations.'" (*West Chandler Boulevard Neighborhood Assn. v. City of Los Angeles* (2011) 198 Cal.App.4th 1506, 1514, fn. 4.) Although the test includes both "practical difficulties" and "unnecessary hardships," the focus should be on "unnecessary hardships" and not "practical difficulties," which is a lesser standard. (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 925; *Zakessian v. City of Sausalito* (1972) 28 Cal.App.3d 794, 799.)

Just as with variances, Los Angeles Municipal Code section 14.3.1, which governs the permitting process for eldercare facilities, provides that approval of the eldercare facility is warranted only if the zoning administrator finds "that the strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations." (§ 14.3.1(E).)[1]

In this case, the zoning administrator for the City of Los Angeles (City) approved a permit for an eldercare facility that exceeded the building square footage and number of guest rooms allowed under zoning regulations. Nearby residents challenged the facility arguing that the zoning administrator failed to make all of the necessary findings, including a finding of "unnecessary hardship." The trial court found no substantial evidence supported the finding of "unnecessary hardship."

After review, we agree with the trial court that the zoning administrator's determination that the strict application of the land use regulations to the proposed eldercare facility would result in "unnecessary hardship" was not supported by substantial evidence. Although the developer argued the unnecessary hardship was based

---

[1]     Undesignated citations are to the Los Angeles Municipal Code unless otherwise noted.

2

on its purported lost "economy of scale," no evidence supported that claim. The record contained no evidence that following the zoning regulations and building a less dense facility would cause either financial hardship or unnecessary hardship. We therefore affirm the trial court's judgment requiring the City to rescind its approval of the proposed eldercare facility.

**FACTS AND PROCEDURE**

### 1. Section 14.3.1

Prior to the enactment of section 14.3.1, developers seeking to build an eldercare facility were required to obtain several zoning permits and/or variances for each proposed development.[2] The Los Angeles City Planning Department in a 2003 report recommended the City adopt the ordinance eventually codified in section 14.3.1, explaining: "The growing number of senior citizens in Southern California is more active than previous generations and they are demanding a wide variety of housing types and services. Those who need special living environments and services find that there is an inadequate supply of these housing types in the state. Although, the development community is meeting these demands by providing different types of housing, government can assist by assuring the efficient delivery of these developments and a streamlining of their applications. [¶] This proposed ordinance . . . would enable the City of Los Angeles to expedite the review process for these much-needed Eldercare Facilities." The city attorney reviewing the draft ordinance described it as follows: "This draft ordinance would amend the Los Angeles Municipal Code to add definitions for new and previously undefined uses, provide development standards for Alzheimer's/Dementia Care Housing, Assisted Living Care Housing, Senior Independent Housing and Skilled

---

[2] For example the Los Angeles City Planning Department in a report dated May 8, 2003, explained: "A project that required four separate actions was filed for an 'assisted living/Alzheimer's facility' . . . . It was to contain 47 Assisted Living Care units and 35 Alzheimer's/Dementia Care units (totaling 82 units). The applicant requested a Conditional Use permit to allow deviations from the Min-Shopping Centers and Commercial Corner Development Regulations, a Zone Variance to allow the facility in a P Zone, a variance for reduced parking, and a Site Plan Review to approve the project."

Nursing Care Housing, create a single approval process for these uses and facilitate the processing of applications of Eldercare Facilities."

In 2006, the Los Angeles City Council (City Council) passed ordinance section 14.3.1.  As stated in the ordinance, section 14.3.1's purpose is to "provide development standards for Alzheimer's/Dementia Care Housing, Assisted Living Care Housing, Senior Independent Housing and Skilled Nursing Care Housing, create a single process for approvals and facilitate the processing of application of Eldercare Facilities.  These facilities provide much needed services and housing for the growing senior population of the City of Los Angeles."  (§ 14.3.1(A).)

Pursuant to section 14.3.1(E), to approve an eldercare facility, the zoning administrator is required to make several findings.  As previously noted, "The Zoning Administrator shall not grant the approval unless he or she finds that the strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations."  The zoning administrator also is required to find compatibility with the surrounding neighborhood, an absence of adverse impacts on street access in the surrounding neighborhood, a scale compatible with the surrounding neighborhood, as well as compatibility between the project and the general plan.  (§ 14.3.1(E)(1), (3)-(5).)  Finally, the zoning administrator is required to find "that the project shall provide services to the elderly such as housing, medical services, social services, or long term care to meet citywide demand."  (§ 14.3.1(E)(2).)

## 2. *The Parties and Proposed Project*

The owners of the property, John C. and Thomas Simmers and the developer Community MultiHousing, Inc., sought a permit under section 14.3.1 to build an eldercare facility at 6221 North Fallbrook Avenue in Woodland Hills.  They are collectively referred to as appellants.

With limited exceptions, owners of neighboring single family residences strongly opposed the development of the eldercare facility in their neighborhood.  Their neighborhood association—Walnut Acres Neighborhood Association—and some

4

individual residents Mohammad Tat, Jack Pomakian, Dawn Stead, and Donna Schuele—challenged the development. They are collectively referred to as respondents.

The site of the proposed facility is a one and a half acre lot zoned RA-1 and designated for only very low residential uses. The front of the proposed building is located on Fallbrook, which is classified as a major highway, and in some areas has commercial uses. The commercial uses are not immediately adjacent to the proposed facility, which instead is surrounded by single family homes. Variances previously had been granted to construct a private school on the site, but the school failed to comply with the conditions of its variance approval.

The proposed eldercare facility would house persons 62 years old or older. The proposed project exceeded the maximum allowable density and floor area of the residential zone. Zoning regulations would limit a structure to 12,600 square feet, and the proposed facility would contain 50,289 square feet, including over 20,000 square feet devoted to common areas. The proposed facility would have 60 guest rooms and 76 guest beds, with 25 percent of the beds allocated to persons with Alzheimer's or dementia. Application of the zoning regulations would have limited the site to 16 guest rooms. The height of the project was consistent with that allowed in the RA-1 zone.

The developer submitted a proposal to the City in connection with its requested permit. The proposal explained: "[S]tatistics reported in the City's Housing Element . . . show that while approximately nine percent of the City's population is currently aged 65 years and older, the age distribution is expected to shift, and almost triple by 2040 in the greater Los Angeles area." An article on aging statistics was included in the record before the zoning administrator. It provides that people over 65 are expected to grow to 19 percent of the population by 2030, doubling from 2000. The projection for California was even higher at 22.8 percent of the population. The United States Census Bureau projected rapid growth nationwide of persons over 65, projecting that by 2030 one in five residents would be age 65 or older.

According to the developer's proposal, limiting the project to the zoning requirements at the proposed site "poses a significant practical difficulty and an

5

unnecessary hardship in that with this restriction would limit development of the Project Site to a maximum of approximately 12,600 total square feet of residential floor area . . . . [¶] This development limitation represents a vast and inappropriate underutilization of the Project Site, which is inconsistent with the basic purposes and intent of the LAMC [Los Angeles Municipal Code] and would not allow the highest and best use of the Project Site, given the clear existing and projected future market demand for Eldercare Housing. It would also be at cross purposes to the proposed Eldercare Facility's objective, which is to provide Eldercare Housing in sufficient quantity so as to contribute meaningfully to the current and projected future demand for such housing consistent with the City's Regional Housing Needs Assessment and in a manner that is compatible with and enhances the character of the established surrounding residential neighborhood." Limiting the project size would present a "practical difficulty" to the developer who would lose "the economy of scale required for the economic operation of an Eldercare Facility if [the developer is] not allowed to develop the 60 guest rooms as proposed."

As we shall now describe, the proposed eldercare facility was reviewed multiple times with different results.

### 3. Zoning Administrator's Decision

In connection with the proposed eldercare facility, city staff drafted a report, which described the property, the project, and the surrounding areas. The report did not consider whether limiting the facility to 16 rooms would pose an unnecessary hardship. The report contained no information regarding economy of scale in the construction or running of the project.

On May 2, 2012, the zoning administrator approved the project. He concluded that the "strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations." (Boldface omitted.) The zoning administrator explained: "According to the applicant, the strict application of the FAR [floor area ratio] limitation of the RA Zone in this case would limit the proposed Eldercare facility to only 12,600 square feet and would reduce the building envelope to a level where only a

6

maximum of 16 guest rooms would be feasible on the site because of the need to accommodate the required common areas needed to support the residents." "The strict application of the zoning regulations to the proposed elder care facility . . . would limit the site's ability to provide needed on-site amenities and support services to the detriment of the project's occupant or would limit the site to only 16 guest rooms, which would result in significant underutilization of the site and would not permit the operator to achieve the economy of scale required to provide the level of on-site support services and amenities required for the eldercare facility's unique population. Denial of the request would therefore preclude the provision of much needed housing for the elderly population."

The zoning administrator also found as follows: "The project will provide services to the elderly such as housing, medical services, social services, or long term care to meet the citywide demand." (Boldface omitted.) The opinion explained that the facility will have 60 guest rooms with 76 beds. "The facility's model is to provide long-term care in a home-style setting and to provide a wide range of supportive services tailored to the individual needs of each resident." A 75 percent average occupancy rate in assisted living facilities was the norm in the industry. Although local residents argued that there were high vacancy rates in nearby facilities they provided no data to support their claims.

The zoning administrator further found that residential care facilities were becoming more popular. A Forbes magazine article indicated that eldercare facilities range from small homes with four to 10 beds to large institutions with over 100 beds. The zoning administrator relied in part on data from the developer, explaining: "The applicant noted that the proportion of the population over the age of 75 is expected to double in the next 20 years generating a strong need and demand for eldercare facilities. Again, data was not submitted to substantiate this assertion. However, the shift in population as baby boomers age is well known." Census data is not available for the City. Nationwide data show that the elderly population will almost double between 2000 and 2030. "The City Housing Element cites approximately 9 percent of the City's

7

population is currently aged 65 years and older.  One-fifth of all households citywide . . . are headed by elderly persons . . . ."

#### 4.  *Appeal to the South Valley Area Planning Commission*

Appellants appealed the zoning administrator's approval to the South Valley Area Planning Commission.  A public hearing was held June 28, 2012.  Dan Chandler, one of the developers, testified that the area adjacent to the housing project had a "tremendous shortage of senior housing."  The developer's representative stated that forcing the project to comply with zoned density requirements would reduce the project by more than 75 percent.  "There's no evidence that the citywide demand for these services has been satisfied in the six years since the ordinance was adopted . . . ."

The hearing officer for the zoning administrator testified as follows:  "And yes, we granted relief from the zoning regulations to allow a 50,000 square foot facility when the maximum floor area is 12,600 square feet.  We were allowed to do that under the eldercare provisions in order to facilitate these types of facilities, as long as we make the finding of practical difficultly, which I didn't get too much into that finding, but again, it's just a matter of logic and practicality that you really can't, if you were to limit the site to 12,600 square feet, you would end up with a maximum of 16 guest rooms.  And with the level of support services that this type of facility needs, it really wouldn't be feasible."

Property owners near the proposed facility argued that the zoning administrator merely echoed statements made by the developer, which according to them were not supported by any evidence.  They claimed there was no evidence of a demand either in the area adjacent to the eldercare facility or citywide for the eldercare services proposed by the project.  "The National Association of Real Estate Investment Trust, a national trade association, has indicated that there may be overbuilding in the eldercare industry . . . ."  Appellants stated that there were 20 facilities within a one-mile radius of proposed facility and that those facilities had vacancies.

The South Valley Planning Commission concluded that the facility was not appropriate for the neighborhood.  One commissioner described it as a "lovely facility"

8

but inappropriate for the chosen location. Another was concerned about the windows in the eldercare facility overlooking the adjoining single family residences. The facility was described as "too massive" and "too dense" for a single family neighborhood. One commissioner would have affirmed the zoning administrator's decision, only adding mature landscaping. Overall, four commissioners voted to grant the appeal and one to deny it.

## 5. *Planning and Land Use Management Committee*

The City Council asserted jurisdiction and voted to send the proposal for the eldercare facility to the City's Planning and Land Use Management Committee.

On August 15, 2006, the Planning and Land Use Management Committee recommended that the City Council adopt the findings of the zoning administrator. The City Council voted consistently with the committee, thereby overruling the decision of the South Valley Planning Commission.

## 6. *Superior Court*

Respondents petitioned for a writ of mandate in the superior court. Appellants and the City opposed the petition. (The City is not a party on appeal.)

In a lengthy order, the superior court concluded the majority of findings by the zoning administrator were supported by substantial evidence. Because those findings are not challenged on appeal, we have not described them in detail. With respect to the findings challenged on appeal, the superior court found no substantial evidence supporting unnecessary hardship or citywide demand for senior housing.

First, the trial court found that the zoning administrator's finding that the strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulation was not supported by substantial evidence. Citing *Stolman v. City of Los Angeles, supra*, 114 Cal.App.4th at page 926, the court explained that unnecessary hardship did not include increased profits. The court concluded that appellants failed to present evidence that restricting the proposed eldercare facility to 16 guest rooms and 12,600 square feet would result in practical difficulties or unnecessary hardships.

9

As the court explained: "Here, there is no substantial evidence in the administrative record that the RPIs [appellants] will not be able to make a profit or provide assisted living services if the facility is limited in size to 12,600 square feet. . . . The only evidence in the record of any difficulty or hardship to the RPIs if the Eldercare Facility is limited to 12,600 square feet with 16 rooms is that the RPIs 'would be denied the economy of scale required for the economic operation of an Eldercare Facility if they are not allowed to develop the 60 guest rooms as proposed.'" That is outside the meaning of practical difficulties or unnecessary hardship as those terms are defined in the case law.

The court also found no substantial evidence supported the finding that the project would provide services to the elderly such as housing to meet citywide demand. The court found no evidence of a citywide demand for the services offered by the project. The court concluded that the developer should have provided information regarding other facilities to compare the other facilities with their facilities.

The court issued a judgment ordering the City to set aside its decision granting appellants a permit to construct the proposed eldercare facility.

## DISCUSSION

"When evaluating the validity of an administrative decision, both the trial court and appellate court perform the same function: we will affirm the City's decision if it is supported by substantial evidence. In doing so, we review the entire record. We may not interfere with the City's discretionary judgments and must resolve reasonable doubts in favor of the administrative findings and decision. [Citations.] We may not substitute our judgment for the City's and reverse because we believe a contrary finding would have been equally or more reasonable. [Citation.] However, although the City was required to make and expressly state certain findings, we do not presume that the City's decision was based on the required findings or that those findings are supported by substantial evidence." (*Committee to Save Hollywoodland Specific Plan v. City of Los Angeles* (2008) 161 Cal.App.4th 1168, 1182.)

10

***1. No Substantial Evidence Supported the Zoning Administrator's Conclusion That
"[t]he Strict Application of the Land Use Regulations on the Subject Property Would
Result in Practical Difficulties or Unnecessary Hardships Inconsistent with the
General Purpose and Intent of the Zoning Regulations"***

The zoning administrator found the strict application of land use regulations would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations.

The zoning administrator concluded: "According to the applicant, the strict application of the FAR limitation of the RA Zone in this case would limit the proposed Eldercare facility to only 12,600 square feet and would reduce the building envelope to a level where only a maximum of 16 guest rooms would be feasible on the site . . . ." "The strict application of the zoning regulations to the proposed elder care facility, a unique use relative to other uses generally permitted by-right in the RA Zone, would limit the site's ability to provide needed on-site amenities and support services to the detriment of the project's occupants or would limit the site to only 16 guest rooms, which would result in significant underutilization of the site and would not permit the operator to achieve the economy of scale required to provide the level of on-site support services and amenities required for the eldercare facility's unique population. Denial of the request would therefore preclude the provision of much needed housing for the elderly population."

As we explain the finding is not supported by substantial evidence. Prior to reviewing the evidence we discuss the requirements for "unnecessary hardship." We reject appellants' basic premise that "unnecessary hardship" should be defined differently in the context of section 14.3.1 from the identical language in the context of a variance.

*A.  Section 14.3.1 Requires a Showing of "Unnecessary Hardship"*

The Los Angeles Municipal Code section 12.27 governs variances. Once the applicant completes a form, the zoning administrator shall consider the application and may approve it in whole or part, deny it, or require conditions. (§ 12.27(b).) "[N]o variance may be granted unless the Zoning Administrator" makes several findings including "that the strict application of the provisions of the zoning ordinance would

11

result in practical difficulties or unnecessary hardships inconsistent with the general proposes and intent of the zoning regulations . . . ." (§ 12.27(d).)

In *Stolman v. City of Los Angeles, supra*, 114 Cal.App.4th 916, Division Four of this court considered the requirement in section 12.27 that no variance may be granted unless the zoning administrator finds that "the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships . . . ." *Stolman* involved a gasoline station operator who sought to extend services provided by the gas station to include auto detailing. The court assumed that a "financial hardship" may constitute an "unnecessary hardship." (*Stolman*, at p. 926.) But the court found no evidence of a financial hardship. There was no "information from which it [could] be determined whether the profit [was] so low as to amount to 'unnecessary hardship.'" (*Ibid*.) There was no evidence the property could not be put to use as a gasoline station without the automobile detailing operation. (*Ibid*.) "'If the property can be put to effective use, consistent with its existing zoning . . . without the deviation sought, it is not significant that the variance[] sought would make the applicant's property more valuable, or that [it] would enable him to recover a greater income . . . .'" (*Ibid*.)

Although *Stolman v. City of Los Angeles* did not involve section 14.3.1, its analysis of "unnecessary hardships" is persuasive because the court considered the identical language at issue under section 14.3.1(E). It is appropriate to interpret the identical language in section 12.27 and section 14.3.1 to mean the same. (*Estate of Griswold* (2001) 25 Cal.4th 904, 915-916 [where statutory language has been judicially construed subsequent use of the language is presumed to carry the same construction unless contrary intent appears].) This is especially warranted in this case as section 14.3.1 was an effort to create an approval process for eldercare facilities, which prior to its implementation such approval required applying for numerous entitlements and variances. Although section 14.3.1 does not require all of the same findings as required for a variance under section 12.27, the requirement of "unnecessary hardship" is the same.

12

*Wollmer v. City of Berkeley* (2009) 179 Cal.App.4th 933 exemplifies a statute requiring *no* finding of "unnecessary hardships" and instead requiring concessions to developers who seek to build affordable housing. In *Wollmer*, the court considered Government Code section 65915, which provided that "[i]f a developer agrees to dedicate a certain percentage of the overall units in a development to affordable or senior housing, . . . the municipality [must] grant the developer a density bonus . . . ." (*Wollmer*, at p. 943.) The statute at issue was "'designed to encourage, even require, incentives to developers that construct affordable housing.'" (*Ibid*.) *Wollmer* does not shed light on the meaning of section 14.3.1 because it does not include the "unnecessary hardship" language at issue here. In contrast to Government Code section 65915 that requires concessions unless findings are made, section 14.3.1(E) prohibits concessions unless "strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations." If anything, *Wollmer* shows that a statute may be drafted in a way to allow a density bonus, which is not sanctioned under section 14.3.1.

*B. Appellants Show No Substantial Evidence of Unnecessary Hardship*

As in *Stolman*, we assume that financial hardship may be sufficient for purposes of obtaining a permit under section 14.3.1 to show unnecessary hardship, but find no evidence supporting the claimed financial hardship. The developer's proposal indicated the space would be underutilized if the density requirements were imposed and it would lose its "economy of scale" because it would be limited to 16 rooms instead of the proposed 60 rooms. Appellants also emphasize the following testimony on behalf of the zoning administrator: "And yes, we granted relief from the zoning regulations to allow a 50,000 square foot facility when the maximum floor area is 12,600 square feet. We were allowed to do that under the eldercare provisions in order to facilitate these types of facilities as long as we make the finding of practical difficulty, which I didn't get too much into that finding, but again, it's just a matter of logic and practicality that you really can't, if you were to limit the site to 12,600 square feet, you would end up with a

13

maximum of 16 guest rooms.  And with the level of support services that this type of facility needs, it really wouldn't be feasible."

There was no substantial evidence of an unnecessary hardship.  There was no evidence that a facility with 16 rooms could not be profitable.  Eldercare homes apparently include small homes with four to 10 beds, according to the zoning administrator's report.  There was no evidence that necessary support services demanded additional rooms in order to generate a profit.  Just as in *Stolman v. City of Los Angeles, supra*, 114 Cal.App.4th at page 926 there was no "information from which it [could] be determined whether the profit [was] so low as to amount to 'unnecessary hardship.'"

We need not dwell on appellants' argument that we must give substantial deference to City planners or City staff because neither City planners nor City staff conclude 16 rooms would pose an unnecessary hardship or any hardship at all.  No report presented either by appellants or by City staff documented the consequence of limiting the development to 16 rooms.

Appellants' argument that cases have granted variances without a showing of financial information is not persuasive because the cases they cite do *not* rely on a financial hardship to show unnecessary hardship.  For example, *Committee to Save Hollywoodland Specific Plan v. City of Los Angeles, supra*, 161 Cal.App.4th 1168 involved a setback requirement, and substantial evidence supported an unnecessary hardship because much of the yard was below grade "rendering enforcement of the three-foot setback problematic" and potentially hazardous.  (*Id*. at p. 1184.)  *Committee* expressly distinguished its facts from a case involving economic hardship.  (*Id*. at p. 1184, fn. 12.)  Similarly in *Eskeland v. City of Del Mar* (2014) 224 Cal.App.4th 936, 949, the court found an unnecessary hardship for a setback because of the lot's shape, topography, location, and surroundings.  The appellate court found substantial evidence supported the finding that the lot had unique characteristics.  (*Id*. at p. 951.)  In contrast to those cases involving a question of whether the property had special features, here appellants seek to maximize their economy of scale—their only stated basis for an

14

unnecessary hardship. Because financial hardship is their sole basis for unnecessary hardship, there must be some evidence supporting it.

### 2. *Substantial Evidence Supported the Zoning Administrator's Finding That the Project Would Provide Housing Services to the Elderly to Meet Citywide Demand*

We now turn to appellants' argument that the court erred in concluding no substantial evidence supported the finding that the project would provide housing services to the elderly to meet citywide demand. Respondents argue that there was no evidence to show citywide demand. We disagree.

Section 14.3.1's purpose statement makes clear that eldercare facilities "provide much needed services and housing for the growing senior population of the City of Los Angeles." (§ 14.3.1(A).) Thus the ordinance indicates that the senior population in the City is growing and services and housing are needed. The administrative record further documents the increasing senior population in articles and studies from the United States Census Bureau. Further, as noted staff from the Los Angeles Planning Department concluded that the elderly are demanding a wide variety of housing types. This evidence amply supported the inference that there will be a citywide demand for housing such as that provided by the proposed eldercare facility. Appellants were not required to present evidence of how services at other facilities compared with their proposed services. The ordinance did not demand that specific finding.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.                    GRIMES, J.

15

Filed 4/15/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WALNUT ACRES NEIGHBORHOOD ASSOCIATION et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants,<br><br>JOHN C. SIMMERS et al.,<br><br>    Real Parties in Interest and Appellants. | B254636<br><br>(Los Angeles County<br>Super. Ct. No. BS139318)<br><br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

    The opinion in the above-entitled matter filed on March 18, 2015, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

\*    BIGELOW, P. J.           FLIER, J.           GRIMES, J.