[Civ. No. 29693. First Dist., Div. One. Nov. 20, 1972.]

SAM ZAKESSIAN et al., Plaintiffs and Respondents, v.
CITY OF SAUSALITO et al., Defendants and Appellants;
EDGEWATER YACHT SALES, INC., et al.,
Real Parties in Interest and Appellants.

796

## COUNSEL

Leland H. Jordan, City Attorney, and Bagshaw, Martinelli, Corrigan & Jordan for Defendants and Appellants.

William H. Stephens and Bagley, Bianchi & Sheeks for Real Parties in Interest and Appellants.

Freitas, Allen, McCarthy, Bettini & MacMahon and David P. Freitas for Plaintiffs and Respondents.

## OPINION

**ELKINGTON, J.**—This appeal concerns the offstreet parking requirements of appellant City of Sausalito's zoning ordinance numbered 630. Its subject is a "variance" from the strict application of that ordinance granted with respect to certain property (hereafter the "property") of appellants and real parties in interest Edgewater Yacht Sales, Inc. and Frank Pasquinucci, whom for convenience we shall hereafter describe as the "owners." The issue is whether the city council's finding that but for the variance, the owners would incur "unnecessary hardship" is supported by substantial evidence.

Ordinance 630, enacted in 1963, provides with exceptions here irrelevant, that in all of the city's districts whenever any main building or structure is erected or put to a different use, "off-street parking spaces for automobiles" shall be furnished according to certain formulae. Such off-street parking spaces and the building or structure need not be on one parcel or under one ownership, but if not a recorded "covenant" that the parking space "will be subservient to the title to the premises" so long as the building or structure is maintained is required.

The property consists of a lot, irregular in shape, but roughly 100 feet square. It is located on the southwest corner of the intersection of Turney Street and Humboldt Avenue in Sausalito. For the most part it is covered by

the waters of San Francisco Bay. Humboldt Avenue to the north is wholly submerged, while Turney Street descends sharply into the bay as it passes the property's easterly line. The area is part of a subdivision of the city's "Unreclaimed Salt Marsh and Tidelands."

The property is improved by a building covering its easterly half and occupying the entire Turney Street frontage. Its southerly portion rests on the shore, but in greater part it is supported by piling extending out into the bay. Bounding the southerly line of the property and of the building is an unused right-of-way of the Northwestern Pacific Railroad Company. Behind the building and to the west the unimproved portion of the property is mostly submerged at high tide.

The building was completed prior to the enactment of Ordinance 630. and is therefore in legal nonconformity with its off-street parking provisions. It is used principally for boating and marine purposes. The owners wish to remodel the building into a restaurant and cocktail lounge, thus putting it "to a different use" and bringing it within the strictures of the ordinance's off-street parking requirements. To comply, 19 off-street parking spaces are needed.

The area of the property to the rear of the building is unavailable for parking because of its submerged condition; but for this problem it would contain sufficient space. And as indicated the building prevents any access to the unimproved area from Turney Street, while entry from Humboldt Avenue is barred by the waters of the bay. Utilization of this rear area for parking would require that it be filled to a point well above the bay's high tide line, and that a portion of the building be demolished to provide a means of ingress and egress.

Under a five-year lease the property already has sufficient parking area on the railroad right-of-way to the south. The lease will probably be renewed, but the owners are unable to obtain the necessary recorded covenant that the space will "be subservient to the title to the premises."

To resolve their dilemma the owners petitioned the city's "Board of Adjustment" for a variance from the strict provisions of Ordinance 630 on the grounds of "unnecessary hardship." They requested leave to use the parking area of the railroad right-of-way as long as it was available to them. They agreed to fill in the property's rear area, and if and when the right-of-way was no longer available, to tear down a section of the building, thus providing the necessary access for parking on the property.

The owner's petition was opposed by plaintiffs and respondents Sam Zakessian and Zack's Incorporated (hereafter collectively, "Zack's"), the owners of a nearby restaurant and bar.

After a hearing by the board the variance was granted. Zack's in the manner provided by the zoning ordinance, appealed to the Sausalito City Council. After extended hearings, and once rejecting the owner's application, the city council, imposing certain conditions, approved a "temporary variance."

The conditions of the variance, among other things, required the owners: (a) to remove an "existing high, solid wooden fence on the property which presently blocks the view of San Francisco Bay"; (b) to forthwith fill the unimproved portion of the property—thus guaranteeing "adequate space for on-site parking should that become necessary," and in the meantime, providing an "open space with visual and physical access to the Bay shoreline"; (c) to landscape the filled-in portion according to plans approved by the city; (d) to provide a walkway along the property's shoreline "for general public use"; and (e) when and if the adjacent right-of-way becomes unavailable, to remove a portion of the building facing Turney Street, thus providing access to the property's rear parking area.

The city council, as required by the zoning ordinance, made written findings of fact. In considerable detail were described the several conditions of the variance, and the many benefits flowing to the public therefrom. And as required by the ordinance before a zoning variance could be granted, the council found:

"Unless the exceptions requested are granted, *the applicants will . . . incur practical difficulties and unnecessary hardships . . . .*"

Zack's commenced the instant mandate proceedings under the authority of Code of Civil Procedure section 1094.5, seeking to compel vacation of the variance. After a hearing the trial court, among other things, found the city council's finding of "practical difficulties and unnecessary hardships" to be unsupported by substantial evidence. Judgment was entered commanding that body to set aside the variance. The defendants city, city agencies, city officials, and the owners as the real parties in interest, have appealed from the judgment.

■ It is a clear rule of law that in a mandate proceeding such as this, brought to review the granting of a zoning variance, the grant will be sustained if the zoning agency's findings "suffice to establish compliance with all of the statutory criteria and are supported by substantial evidence in the record. . . ." (*Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 767, 773 [59 Cal.Rptr. 146, 427 P.2d 810].) For a discussion of the "substantial evidence" rule see *Green Trees Enterprises,*

*Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].

█ Accordingly, as we have indicated, the narrow issue presented to us by the parties is whether the city council's determination that the owners will suffer "practical difficulties and unnecessary hardships" if the requested variance is not allowed, is supported by substantial evidence. Respondents Zack's state the issue as: "There is no practical difficulty or unnecessary hardship present to sufficiently warrant the granting of a variance."

█ We note initially that the basic requirement of "Practical difficulty or unnecessary hardship" for the granting of a zoning variance has received nationwide approval and statutory adoption. (See 58 Am.Jur., Zoning, § 201 et seq.; 101 C.J.S., Zoning, § 290 et seq.; 2 Anderson, American Law of Zoning (1968) § 14.09.)

We further observe that of the two terms, "practical difficulty" and "unnecessary hardship" the essential requirement is "unnecessary hardship." (See *Tustin Heights Assn.* v. *Bd. of Supervisors,* 170 Cal.App.2d 619, 627 [339 P.2d 914].) Sometimes the terms are treated as interchangeable, but in "the later cases the terms were separated and 'practical difficulties' was developed as a lesser standard . . . ." (2 Anderson, *op. cit.,* § 14.10.) Ordinance 630, for a variance, requires a city council finding of "practical difficulty *or* unnecessary hardship." (Italics added.) The parties treat the issue as one of "unnecessary hardship"; we shall also.

The basic element of "unnecessary hardship" is pointed out in 8 McQuillan (1965 rev. ed.) Municipal Corporations, section 25.167, pages 542-544, as follows: "It is fundamental that the difficulties or hardships must be unique to justify a variance; they must be peculiar to the application of zoning restrictions to particular property and not general in character, since difficulties or hardships shared by all go to the reasonableness of the zoning restrictions broadly and render them invalid or call for their modification by amendatory ordinance. In other words, the plight of an applicant for a variance must be due to peculiar circumstances and conditions, and it must be special or unique in contrast with that of other property owners in the same district. . . ." To the same effect see 58 American Jurisprudence, Zoning, section 204, page 1051; 101 Corpus Juris Secundum, Zoning, section 291; 2 Anderson, *op. cit.,* sections 14.16, 14.32; and see the authorities in these works cited.

The rule is closely followed in California. *Minney* v. *City of Azusa,* 164 Cal.App.2d 12, 31 [330 P.2d 255], quoting broad authority, states: " 'A "variance" for undue hardship is grounded in conditions peculiar to the

particular lot as distinguished from other property in the use district.'" Other authority states that a zone variance is the means used "to solve a unique problem for any property owner" (*Richter* v. *Board of Supervisors*, 259 Cal.App.2d 99, 106 [66 Cal.Rptr. 52]); for " ' "amelioration of unnecessary hardships which, owing to special conditions, would result from literal enforcement of the restrictive features of the ordinance" ' " (*Kappadahl* v. *Alcan Pacific Co.*, 222 Cal.App.2d 626, 638 [35 Cal.Rptr. 354]); and to relieve the " 'type of hardship which inheres in the particular property . . . .' " (*City of San Marino* v. *Roman Catholic Archbishop*, 180 Cal.App.2d 657, 673 [4 Cal.Rptr. 547].) (See also *Bringle* v. *Board of Supervisors*, 54 Cal.2d 86, 90 [4 Cal.Rptr. 493, 351 P.2d 765]; *Rubin* v. *Board of Directors*, 16 Cal.2d 119, 124 [104 P.2d 1041]; *Allen* v. *Humboldt County Bd. of Supervisors*, 241 Cal.App.2d 158, 161 [50 Cal. Rptr. 444].)

A clear illustration of "unnecessary hardship" occurs when the natural condition or topography of one's land places him at a disadvantage vis-à-vis other landowners in the zoning district. It is said: "Satisfaction of the requirement that the circumstances which result in unnecessary hardship be peculiar to the applicant's property is most clearly established where the hardship relates to the physical characteristics of the land. Where, for example, peculiarities of size, shape or grade of the parcel in question are unique and if hardship relates to these, the requirement of unique circumstances is met. . . . [¶] If singular and related topographical features are lacking, the court may not find the circumstances which plague the applicant are different from those which affect the land of his neighbors." (2 Anderson, *op. cit.*, § 14.33; see also 8 McQuillan, *op. cit.*, § 25.167.) This refinement of the rule is recognized in California. (See *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra*, 66 Cal.2d 767, 774; *Allen* v. *Humboldt County Bd. of Supervisors, supra*, 241 Cal.App.2d 158, 162; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 354 [203 P.2d 37].) Indeed, Ordinance 630, with which we are here concerned, expressly spells out this very requirement of "unnecessary hardship." It permits a variance "in the case of a parcel . . . where unusual topographic or other exceptional or extraordinary conditions exist and limit the use of such parcel. . . ."

It is notable that in addition to the somewhat conclusory finding of "unnecessary hardship" the city council found: "There are exceptional and extraordinary circumstances and conditions peculiar to the subject parcel which collectively do not apply to other parcels or uses in the area."

Of course it is not every prejudicial difference between one's property

and that of others that will justify a finding of "unnecessary hardship." The disadvantage must be substantial. (See 8 McQuillan, *op. cit.*, § 25.168; 2 Anderson, *op. cit.*, §§ 14.32, 14.33.) The court in *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 774, while recognizing "cases in which topographical conditions prove to be physically incompatible with attempted adherence to a zoning provision, . . ." found an "unusual subsoil condition" to have no substantial relationship to "the asserted need for a floor area variance." (P. 774.)

From the foregoing authority it must be concluded that the evidence before the city council reasonably supported its finding of "exceptional and extraordinary circumstances and conditions peculiar to the subject parcel," and its implied finding that such circumstances and conditions were substantial.

But there is yet another element which must exist before "unnecessary hardship" may be found. ■ "[I]t is fundamental that any variance, . . . from a zoning ordinance, administratively authorized by a zoning board, must be in harmony with the general purpose and intent of the zoning laws. . . ." (8 McQuillan, *op. cit.*, p. 573, § 25.171; see also 2 Anderson, *op. cit.*, § 14.16.) California's Supreme Court expresses the same rule in this manner: "Strict adherence to the general scheme of a zoning ordinance may result in undue hardship with respect to certain parcels of land, and in order to insure the validity of the ordinance without impairing its general purpose and intent, provision is ordinarily made for the granting of variances and the imposition of conditions. . . ." (*Bringle* v. *Board of Supervisors, supra,* 54 Cal.2d 86, 90.) ■ Ordinance 630 also specially recognizes this rule; before a variance may be granted it requires a finding (here made), "That the granting of such variance will be in harmony with the general purpose and intent of this ordinance . . . ."

We observe that the general purpose and intent of Ordinance 630 is to insure the availability of off-street parking accommodations. No concern whatever is indicated whether these accommodations be on, or adjacent to, the subject property.

The conditions of the variance here at issue make certain that the required off-street parking will be available throughout the life of the building of the subject property, either on the adjacent right-of-way or, when necessary, on the property itself. The ordinance's purpose is in no way frustrated. The city council's finding that the variance granted the owners "will be in harmony with the general purpose and intent" of Ordinance 630 was beyond any doubt supported by substantial evidence.

Zack's contends that since the owners are in a financial position and if necessary, willing, to make parking space available on the property without any variance there can be no hardship. ■ It is true that financial hardship alone, at least ordinarily, will not constitute unnecessary hardship. But where the unique condition of one's property causes the financial hardship the rule is otherwise. Professor Anderson states: "Although financial loss alone will not supply the essential element of unnecessary hardship, such loss may be considered by the board of adjustment along with other circumstances. . . ." (2 Anderson, *op. cit.,* § 14.22.) In his work Professor McQuillan points out that "it is not uniqueness of the plight of the owner, but uniqueness of the land causing the plight, which is the criterion. . . ." (8 McQuillan, *op. cit.,* § 25.167.) And the court in *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 775, declared that "[V]irtually *any* circumstance which would lead [one] to seek a variance may ultimately be translated into economic terms." It would be a rare case of topographical uniqueness of land that could not be alleviated by *some* amount of financial expenditure. The instant contention is found to be unsound.

■ Much emphasis was placed by the trial court on what it described as the city council's findings containing a number of "eloquent and persuasive statements in support of the desirability of the fill, but very little [relating] to the question of relieving real parties from the strict application of the off-street parking requirements." There can be no doubt, as suggested by the court, that many of the statements and conditions of the city council offered no legal support whatever for the granting of the variance. *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 777-778, has expressly held that "benefit to the community" alone does not justify a zoning variance. (See also *Hamilton* v. *Board of Supervisors,* 269 Cal.App.2d 64, 67-70 [75 Cal.Rptr. 106].) But, nevertheless, where a variance is *otherwise* properly supported by findings, it is legally permissible, and common practice, for the zoning authority to impose conditions " 'in accordance with the spirit and purposes of the general zoning plan. . . . ' " (*Kappadahl* v. *Alcan Pacific Co., supra,* 222 Cal.App.2d 626, 638; see also *Bringle* v. *Board of Supervisors, supra,* 54 Cal.2d 86, 88.)

For the reasons stated we must, and do, conclude that substantial evidence supported the city council's finding of "unnecessary hardship." The judgment of the superior court must accordingly be reversed.

We observe nothing in *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, or *Cow Hollow Improvement Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160 [53 Cal.Rptr. 610], which conflicts with our conclusion. In *Broadway, Laguna etc. Assn.,* the court

found no "exceptional and extraordinary circumstances and conditions peculiar to the subject parcel," such as were here found on substantial evidence by the city council. And, unlike the case before us, no evidence was found which established "unnecessary hardship." Similarly, in *Cow Hollow Improvement Club,* where the only claim of hardship was that the property was economically unattractive for use as a single family dwelling as required by the zoning ordinance, the court properly found "no evidence that [the owner] would suffer any *unnecessary* hardship if he were not granted a variance." (Italics added; 245 Cal.App.2d at p. 179.)

No irregularity is seen in the "delayed" findings of the city council. The record indicates no intent of the council to finally determine the variance proceedings prior to the filing of its findings of fact.

The judgment is reversed. The superior court will enter judgment denying plaintiffs and respondents Sam Zakessian and Zacks Incorporated any relief.

Molinari, P. J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied December 19, 1972.

---

*Assigned by the Chairman of the Judicial Council.