Filed 9/16/15; pub. order 10/9/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEVI FAMILY PARTNERSHIP, L.P.,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>       Defendant and Respondent. | B257764<br>(Los Angeles County<br>Super. Ct. No. BS143091) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

Jeffer Mangels Butler & Mitchell, Benjamin M. Reznik and Matthew D. Hinks, for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Terry P. Kaufmann-Macias, Assistant City Attorney and Amy Brothers, Deputy City Attorney, for Defendant and Respondent.

After the South Valley Area Planning Commission (Commission) declined to approve an eldercare facility proposed by appellant Levi Family Partnership, appellant sought administrative mandamus against respondent City of Los Angeles (City). In denying mandamus, the trial court concluded that the Commission's findings were adequate to support its decision. We affirm the judgment entered by the court.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

A. *Los Angeles Municipal Code Section 14.3.1*

The principal issues concern the application of Los Angeles Municipal Code section 14.3.1, which the Los Angeles City Council enacted in 2006.[1] Prior to the enactment of that provision, developers seeking to build eldercare facilities often had to obtain several permits or variances. (*Walnut Acres Neighborhood Assn. v. City of Los Angeles* (2015) 235 Cal.App.4th 1303, 1306 (*Walnut Acres*).) In 2003, the Los Angeles City Planning Department recommended that the City adopt section 14.3.1 to "expedite the review process for these much-needed [e]ldercare [f]acilities."

That goal is reflected in section 14.3.1(A), which states: "The purpose of this article is to provide development standards for [eldercare facilities], create a single process for approvals and facilitate the processing of applications of [e]ldercare [f]acilities. These facilities provide much needed services and housing for the growing senior population of the City of Los Angeles." Section 14.3.1(B) further authorizes zoning administrators to approve an eldercare facility within

---

[1] All further citations are to the Los Angeles Municipal Code, unless otherwise indicated.

enumerated zones governed by the City's zoning ordinance "when [it] does not meet the use, area, or height provisions of the respective zone . . . ."

Section 14.3.1(E) sets forth the key requirements for an approval.**2** To grant an approval, the zoning administrator must make an "unnecessary hardship[]" finding (see *Walnut Creek*, *supra*, 235 Cal.App.4th at p. 1306), namely, that "strict application of the land use regulations" to the subject property would result in "practical difficulties or unnecessary hardships" (§ 14.3.1(E)). In addition, the zoning administrator is required to make specified findings relating to the proposed facility's potential benefits and burdens. To grant an approval, the zoning administrator must find that the proposed facility provides eldercare services "to meet the citywide demand" (§ 14.3.1(E)(2)); that it does not have an adverse impact on neighboring properties, street access, and circulation (§ 14.3.1(E)(1), (3)); that it is compatible with the "scale and character" of

---

**2**       Section 14.3.1(E) provides: "The Zoning Administrator shall not grant the approval unless he or she finds that the strict application of the land use regulations on the subject property would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations. The Zoning Administrator must also find: [¶] 1. that the project's location, size, height, operations and other significant features shall be compatible with and shall not adversely affect or further degrade adjacent properties, the surrounding neighborhood, or the public health, welfare, and safety; [¶] 2. that the project shall provide services to the elderly such as housing, medical services, social services, or long term care to meet citywide demand; [¶] 3. that the project shall not create an adverse impact on street access or circulation in the surrounding neighborhood; [¶] 4. that the project provides for an arrangement of uses, buildings, structures, open spaces and other improvements that are compatible with the scale and character of the adjacent properties and surrounding neighborhood; and [¶] 5. that the project is in substantial conformance with the purposes, intent and provisions of the General Plan, applicable community plan, and with any applicable specific plan."

3

adjacent properties (§ 14.3.1(E)(4)); and that it is in "substantial conformance" with the purposes, intent and provisions of the City's General Plan and other applicable plans (§ 14.3.1(E)(5)).

    B. *Appellant's Application*

Appellant owns real property covering 2.88 acres in Tarzana. The property comprises three contiguous lots located at the northwest corner of Calvert Street and Yolanda Avenue. That area is governed by the Reseda-West Van Nuys Community Plan Area (Plan) of the City's General Plan, and is zoned "RA-1-K," a designation that permits single family dwellings, public parks, farming, truck gardening, and limited golf courses.[3]

On June 18, 2010, appellant applied for a permit to build an eldercare facility on the property pursuant to section 14.3.1, which encompasses the approval of such facilities in an RA-1-K zone (see § 14.3.1(B)). Appellant's project involves the demolition of five existing single family homes and eight related buildings, and the construction of up to 128 units to accommodate 156 elder residents. As designed, the 74,436 square-foot facility would consist of one- and two-storey buildings occupying approximately 32 percent of the property. In addition, the facility would include courtyards, patio areas, a swimming pool, landscaped open space, and 54 on-site parking places. The facility, when completed, would operate 24 hours a day, seven days a week, and employ 56 persons working on three staggered shifts. Supporting the application was a traffic study by Overland Traffic Consultants, Inc., which estimated that the

---

[3]    In the zoning designation "RA-1-K," the "-K" signals that property owners may keep equines.

4

facility would generate 415 daily trips, but opined that they would not have a significant impact on the neighborhood.

### C. *Zoning Administrator's Decision*

Appellant's application generated numerous responses for and against the project from residents of the neighborhood and adjoining areas. Opponents maintained that the project would change the neighborhood's character, increase its population density and traffic, and endanger "animal keeping rights." They also argued that the eldercare facility was not needed.

The staff of the Office of Zoning Administration examined the property, and the Los Angeles Department of Transportation submitted a memorandum to the zoning administrator regarding appellant's traffic study, concluding that it "adequately describe[d] all projected transportation impacts associated with the proposed development . . . ." On February 14, 2011, at a public hearing, the zoning administrator heard oral testimony from proponents and opponents of the project, and received other evidence. The zoning administrator also received additional documentary evidence following the hearing.

On December 30, 2011, the zoning administrator approved the project, subject to certain conditions not relevant here. In ruling, the zoning administrator made the findings mandated under section 14.3.1, and set forth a basis for each finding. He concluded that strict application of the zoning regulations in an RA-1 zone would result in an unnecessary hardship by rendering many eldercare projects infeasible, in view of the limit on the number of living units per lot in that zone. He further determined that the project met the citywide demand for eldercare, noting that although the City did not collect data regarding the number of elderly persons seeking housing, there was evidence that approximately nine percent of the City's residents were 65 year or older. He found that the project would not be materially detrimental to the neighborhood, as several businesses

5

had been permitted to operate in the project's vicinity.  Pointing to appellant's traffic study, he also found that the project would have no adverse impact on street access or circulation.  Finally, he determined that subject to the recommended conditions, the project facilitated the General Plan and conformed with applicable regulations.

D. *Commission's Decision*

Two opponents of the project appealed from the zoning administrator's decision to the Commission.  On March 22, 2012, after receiving written submissions from proponents and opponents of the project and taking testimony at a public hearing, the Commission overturned the decision.  The Commission's written decision, dated March 4, 2013, concluded that none of the findings required under section 14.3.1 for approval of the project had been demonstrated.  The Commission reversed all the zone administrator's findings, and stated a basis for each negative finding.

E. *Petition*

On May 31, 2013, appellant initiated its action for administrative mandamus regarding the Commission's decision pursuant to Code of Civil Procedure section 1094.5.  Pointing to *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 (*Topanga I*), appellant maintained that the Commission's decision did not disclose the "analytic route [it] traveled from evidence to action," arguing that the decision merely negated the zoning administrator's findings, modified his discussion, and quoted arguments from the project's opponents, resulting in "an incoherent set of findings that are utterly devoid of meaning."  Appellant further contended that the Commission's findings reflected misapprehensions of law.

6

On June 27, 2014, after denying appellant's petition, the trial court entered a judgment against appellant and in favor of the City and the Commission. This appeal followed.

## DISCUSSION

Appellant's principal contention is that the Commission's findings are inadequate under *Topanga I.* In addition, appellant contends the Commission incorrectly applied the legal standards governing requests for a variance, and declined to apply the standards governing section 14.3.1. For the reasons discussed below, we reject the contention.[4]

---

[4] The general principles governing our review are explained in *San Franciscans Upholding the Downtown Plan v. City and County of San Francisco* (2002) 102 Cal.App.4th 656, 673-674: "The inquiry for the issuance of a writ of administrative mandamus is whether the agency in question prejudicially abused its discretion; that is, whether the agency action was arbitrary, capricious, in excess of its jurisdiction, entirely lacking in evidentiary support, or without reasonable or rational basis as a matter of law. [Citations.] A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law, if its decision is not supported by findings, or if its findings are not supported by substantial evidence in the record. We may neither substitute our views for those of the agency whose determination is being reviewed, nor reweigh conflicting evidence presented to that body. [Citations.]"

"On appeal, we are governed by the same abuse of discretion standard in pursuing essentially the same task as that of the trial court. Like the trial court, we review the agency's actions and decisions to determine whether they were in compliance with the procedures required by law and were supported by findings which themselves were supported by substantial evidence in light of the entire administrative record. In so doing, our review is de novo, and not bound by the trial court's conclusions. The decisions of the agency are nevertheless given substantial deference and presumed correct. The parties seeking mandamus bear the burden of proving otherwise, and the reviewing court must resolve reasonable doubts in favor of the administrative findings and determination. [Citations.]" (*San Franciscans Upholding the Downtown Plan v. City and County of San Francisco*, *supra*, 102 Cal.App.4th at p. 674.)

A. *Adequacy of the Commission's Findings.*

We begin with appellant's challenge to the Commission's key findings, which is predicated on *Topanga I*. Appellant does not dispute the existence of substantial evidence to support the findings. Rather, appellant maintains that to satisfy the requirements imposed on administrative decisions in *Topanga I*, the Commission could not merely make negative findings regarding the facts required for the project's approval specified in section 14.3.1, but was obliged to support those negative findings with additional sub-findings. Appellant further contends that the Commission's rationale for each key negative finding is inadequate to support that finding. For the reasons explained below, we disagree.

Because the Commission declined to approve the project, in order to establish reversible error, appellant must demonstrate that *all* the key findings are defective, as one adequate finding is sufficient to support the Commission's decision. (*Saad v. City of Berkeley* (1994) 24 Cal.App.4th 1206, 1214-1205.) Appellant's challenge relies on a false premise, namely, that *Topanga I* obliged the Commission to make sub-findings supporting its negative "benefit and burden" findings. Because the Commission's negative "benefit and burden" findings were adequate by themselves to support the Commission's decision, appellant's challenge fails.

At the outset, we observe that section 14.3.1(E) requires factual findings characteristic of two distinct types of exception to basic land uses permitted under a master zoning ordinance, namely, variances and conditional uses. (*Tustin Heights Assn. v. Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 626.) Generally, "[t]he essential requirement of the variance is a showing that strict enforcement of the zoning limitations would cause unnecessary hardship." (*Id*. at p. 627.) In contrast, "[a] conditional use may be permitted if it is shown that its use is

8

essential or desirable to the public convenience or welfare and at the same time that it will not impair the integrity and character of the zoned district.  It must also be shown that it is not detrimental to public health, public morals, or public welfare.  Hardship is not a prerequisite to the issuance of a conditional use permit . . . ." (*Id*. at p. 626.)

Section 14.3.1(E) mandates findings derived from variances and conditional uses.  The requirement for a finding of "unnecessary hardship" in section 14.3.1(E) closely resembles the requirement ordinarily imposed on variances. Indeed, as discussed in *Walnut Acres*, the requirement in section 14.3.1(E) is stated in terms identical to the analogous requirement in the City's provisions governing variances (§ 12.27(D)(1)).  (*Walnut Acres*, *supra*, 235 Cal.App.4th at pp. 1313-1314.)  The remaining requirements for the "benefit and burden" findings in section 14.3.1(E), however, resemble those typically imposed on conditional uses.  Two of those findings (relating to the project's compatibility with the neighborhood and conformity with the general plan) are identical to findings required under the City's provisions governing conditional uses (§§ 12.24(E)(2), 12.24(E)(3)).[5]

*Topanga I* set forth standards for administrative decisions in a case involving an application for a variance,  There, a developer secured a variance from a planning commission to establish a mobile home park.  (*Topanga I, supra,* 11 Cal.3d at pp. 509-510.)  The pertinent statute permitted the grant of a variance "'only when, because of special circumstances applicable to the property, . . . the

---

[5]     We take judicial notice of section 12.24(E) of Los Angeles Municipal Code cited in this paragraph.  (Evid. Code, §§ 452, subd. (b), 459; *BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1209, fn. 1.)

9

strict application of the zoning ordinance deprives such property of privileges enjoyed by other properties in the vicinity and under identical zoning classification.'" (*Id.* at p. 520, italics deleted, quoting Gov. Code, § 65906.)

After a community association unsuccessfully sought relief by administrative mandamus regarding the variance, our Supreme Court directed that a writ be granted to reverse the planning commission's decision. (*Topanga I*, *supra*, 11 Cal.3d at p. 522.) The court determined that in rendering a decision, an administrative agency must make findings sufficient "to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.* at p. 515.) As the court explained, requiring an agency to state "legally relevant sub-conclusions supportive of its ultimate decision" facilitates well-reasoned administrative decisions and judicial review of such decisions. (*Id.* at pp. 514-516.) Additionally, in a footnote, the court stated that it did not approve of language in two appellate court decisions that "endorse[d] the practice of setting forth findings solely in the language of the applicable legislation." (*Id.* at p. 517, fn. 16.) Applying these determinations, the court held that the planning commission's decision was defective because it set forth only the characteristics of the property to be developed, and contained no comparative information regarding the property and neighboring land sufficient to justify a variance. (*Id.* at p. 520.)

Following *Topanga I*, appellate courts have concluded that when a zoning ordinance authorizes an agency to approve a conditional use upon making specified factual findings, *Topanga I* does not bar the agency from stating those findings in the language of the ordinance, and does not oblige the agency to support them with sub-findings. In *Jacobson v. County of Los Angeles* (1977) 69 Cal.App.3d 374, 376 (*Jacobson*), a zoning board granted a conditional use permit for a tennis club under former section 501.9, chapter 5, of the Los Angeles County

Zoning Ordinance. That provision authorized the approval of a conditional use upon the making of specified findings, namely, that the project was not in substantial conflict with the zoning plan, that it was not detrimental in enumerated ways to the neighborhood or the public, that it was compatible with the neighborhood, and that it would not overburden adjoining streets.[6] (*Jacobson, supra,* 69 Cal.App.3d at pp. 377-378.) The zoning board's decision stated the required findings in terms that closely tracked the provision's language, and contained no sub-findings to support them. (*Id*. at pp. 382-384.)

---

[6]    Former section 501.9, chapter 5, of the Los Angeles County Zoning Ordinance stated: "'The Zoning Board may recommend approval and the Commission may approve an application for a conditional use permit where the information submitted by the applicant and/or presented at [a] public hearing substantiates the following findings: [¶] (a) That the proposed use will not be in substantial conflict with the adopted general plan for the area. Where no general plan has been adopted, this subsection shall not apply. [¶] (b) That the requested use at the location proposed will not: [¶] (1) Adversely affect the health, peace, comfort or welfare of persons residing or working in the surrounding area, or [¶] (2) Be materially detrimental to the use, enjoyment or valuation of property of other persons located in the vicinity of the site, or [¶] (3) Jeopardize, endanger or otherwise constitute a menace to the public health, safety or general welfare, and [¶] (c) That the proposed site is adequate in size and shape to accommodate the yards, walls, fences, parking and loading facilities, landscaping and other development features prescribed in this Ordinance, or as is otherwise required in order to integrate said use with the uses in the surrounding area, and [¶] (d) That the proposed site is adequately served: (1) By highways or streets of sufficient width and improved as necessary to carry the kind and quantity of traffic such use would generate, and [¶] (2) By other public or private service facilities as are required. [¶] The Commission shall deny the application where the information submitted by the applicant and/or presented at public hearing fails to substantiate such findings to the satisfaction of the Commission.'" (*Jacobson, supra,* 69 Cal.App.3d at pp. 377-378.)

The appellate court in *Jacobson* concluded the decision was adequate under *Topanga I*, stating: "We do not . . . find anything in [the] footnote [in that decision] criticizing 'the practice of setting forth findings solely in the language of the applicable legislation,' which requires invalidating findings in the language of the applicable ordinance in all cases. The statutory language involved in *Topanga* [*I*] . . . stated only the general conclusion required to support the ultimate decision. It was, moreover, apparent that a finding in the terms of that statute would give no inkling whatever as to what the 'special circumstances' relied upon were, or how strict application of the zoning ordinance would deprive the subject property of privileges enjoyed by other property in the zone. The requirement that the administrative decision disclose the 'legally relevant sub-conclusions supportive of its ultimate decision' can be fully met by findings in the language of the ordinance when the ordinance requires that the relevant sub-conclusions be specifically stated. The Los Angeles County Zoning Ordinance does just that. It requires the zoning board to reach [enumerated] specific subconclusions and, moreover, it describes these as the 'findings' which must be made. It would be a reduction to absurdity of the principle stated in *Topanga* [*I*] to apply it to findings made in the language of an ordinance which thus requires full articulation of the factors upon which the decision is based. The result would be that if the ordinance specified the findings to be made in respect to every evidentiary detail, it would be impossible to make valid findings thereunder." (*Jacobson*, *supra*, 69 Cal.App.3d at p. 391, quoting *Topanga I*, *supra*, 11 Cal.3d at pp. 516-517 & fn. 16.)

A similar conclusion was reached in *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1989) 214 Cal.App.3d 1348, 1363 (*Topanga II*). There, a developer sought a conditional use permit for a hillside housing development pursuant to section 22.56.215(F) of the Los Angeles County Code, which

12

authorizes the grant of such a permit only when the applicant "substantiate[s] to the hearing officer" certain specified facts. After the Los Angeles County Board of Supervisors issued a decision approving the conditional use permit, the appellate court concluded that the decision's findings were adequate, even though they were set forth solely in the language of section 22.56.215(F). (*Topanga II, supra,* 214 Cal.App.3d at p. 1363.) The court stated: "Unlike the county ordinance discussed in *Jacobson*, section 22.56.215(F) does not specify that the facts enumerated therein constitute the findings which must be made. The rationale of *Jacobson* nevertheless applies to section 22.56.215(F). Implicit in that ordinance is the condition that the permit may not be approved unless the facts set forth in the ordinance have been proved. Accordingly, the board properly made its findings in the language of section 22.56.215(F). It would exact needless time, effort and ingenuity to require the board to paraphrase the provisions of section 22.56.215(F) in making findings in support of its approval of a conditional use permit. We refuse to impose such a requirement which, in addition to causing wasted time and effort, likely would result in inadvertent omissions or misstatements of necessary facts." (*Topanga II, supra,* 214 Cal.App.3d at pp. 1363-1364.)

We conclude that appellant's challenge to the Commission's decision fails, insofar as it relies on *Topanga I*. As explained above, section 14.3.1(E) predicates approval of an eldercare facility on "benefit and burden" findings resembling those typically required for a conditional use. Under section 14.3.1(E), a single negative "benefit and burden" finding mandates disapproval of an eldercare facility. In view of *Jacobson* and *Topanga II*, the Commission's negative "benefit and burden" findings were adequate by themselves -- that is, independent of any supporting discussion -- to support the Commission's decision under the standards

13

set forth in *Topanga I*, even though the Commission's findings used the language of section 14.3.1(E).[7]

The cases upon which appellant relies are distinguishable. In three of them, the appellate court held that the pertinent agency's decision violated *Topanga I* because it contained no supporting findings (*Glendale Memorial Hospital & Health Center v. State Dept. of Mental Health* (2001) 91 Cal.App.4th 129, 136, 140-141; *City of Rancho Palos Verdes v. City Council* (1976) 59 Cal.App.3d 869, 889), or because the purported supporting findings were nothing more than a conclusory statement of the ultimate ruling (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1447). In the remaining cases, the appellate court concluded that the agency's decision violated *Topanga I* because the agency's findings were insufficient on their face to support the ultimate ruling under the applicable statutes. (*Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1166-1167 [decision lacked findings necessary for variance]; *American Funeral Concepts v. Board of Funeral Directors & Embalmers* (1982) 136 Cal.App.3d 303, 309-310 [sole supporting finding reflected misinterpretation of governing statute]; *Woodland Hills Residents Assn., Inc. v. City Council* (1975) 44 Cal.App.3d 825, 837 [decision lacked statutorily-required finding].) In contrast, as explained above, the Commission's negative "benefit and burden" findings "bridge the analytic gap between the raw evidence and ultimate decision or order."

---

[7]     In so concluding, we do not address or decide whether the Commission's negative "excessive hardship" finding is adequate under *Topanga I*.

14

(*Topanga I*, 11 Cal.3d at p. 515.)[8]  Appellant has thus shown no reversible error under *Topanga I*.[9]

---

[8]     At oral argument, appellant directed our attention for the first time to *City of Carmel-by-the-Sea v. Board of Supervisors* (1977) 71 Cal.App.3d 84, 89 (*Carmel-by-the Sea*).  There, a zoning administrator approved a use permit for a motel pursuant to former section 32c of the Monterey County Zoning Ordinance 911, which provided that in order to grant a use permit, the appropriate authority was required to find "[t]hat the establishment, maintenance or operation of the use or building applied for will not under the circumstances of the particular case, be detrimental to health, safety, peace, morals, comfort, and general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the County."  The zoning administrator's written findings consisted of nothing more than a verbatim quotation of the statutory language stated above.  (*Carmel-by-the-Sea*, *supra*, 71 Cal.App.3d at pp. 89-90.)  The appellate court determined that the written findings were inadequate under *Topanga I*.  (*Id*. at p. 92.)

        *Carmel-by-the Sea* falls outside the rationale stated in *Jacobson,* in view of the critical differences between the ordinances discussed in *Jacobson* and *Topanga II* and former section 32c of the Monterey County Zoning Ordinance 911.  Unlike the ordinances discussed in *Jacobson* and *Topanga II*, former section 32c characterized the necessary findings merely as those appropriate "under the circumstances of the particular case" sufficient to satisfy a generic description of the findings usually required for approval of a conditional use.   Former section 32c thus closely resembles the generic variance ordinance at issue in *Topanga I*, which *Jacobson* distinguished from the ordinance it examined.  (*Jacobson*, *supra*, 69 Cal.App.3d at p. 391.)   Accordingly, *Carmel-by-the-Sea* is inapposite.

[9]     For similar reasons, we reject appellant's related contention that the Commission's decision is fatally "incoherent."  Appellant argues that the Commission derived its decision from the zoning administrator's decision by adding or deleting the word "not" to the zoning administrator's key findings, adding phrases such as "'[t]he Zoning administrator believed'" to the zoning administrator's rationales for his findings, striking out sub-findings favorable to appellant, and inserting arguments from the project's opponents.  Appellant further maintains that the Commission's modifications to the zoning administrator's
*(Fn. continued on next page.)*

15

B. *Remaining Contentions*

We turn to appellant's other contentions, which maintain that the Commission failed to "proceed[] in the manner required by law" (Code Civ. Proc., § 1094.5, subd. (b)). The crux of those contentions is that the Commission, in stating the grounds for its negative findings under section 14.3.1(E), applied inappropriate or mistaken legal standards. As explained below, appellant has established no reversible defect in the Commission's decision.[10]

Appellant contends the Commission's remarks accompanying its negative findings under section 14.3.1 disclose two errors of law. First, appellant maintains the Commission improperly evaluated appellant's application under the standards governing variances. Ordinarily, establishing the "'unnecessary hardship'"

---

decision "created an incoherent set of findings that are utterly devoid of meaning." Although the Commission's discussion of the grounds for its key findings is sometimes difficult to understand, the negative "benefit and burden" findings are intelligible and sufficient by themselves under *Topanga I* to support the decision.

[10] In order to show that the Commission did not proceed in the manner required by law, appellant must demonstrate that the Commission "fail[ed] to comply with required procedures, appl[ied] an incorrect legal standard, or committ[ed] some other error of law." (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.) Furthermore, the Commission's conduct must be prejudicial. (*Environmental Protection Information Center, Inc. v. Johnson* (1985) 170 Cal.App.3d 604, 622; Code Civ. Proc., § 1094.5, subd. (b).) As our Supreme Court has explained, "[o]nly if the manner in which an agency failed to follow the law is shown to be prejudicial, or is presumptively prejudicial, as when the department or the board fails to comply with mandatory procedures, must the decision be set aside . . . ." (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1236.) Because appellant does not suggest the Commission failed to follow mandatory procedures, and otherwise identifies no special circumstances relevant to the applicable standard of prejudice, appellant is obliged to demonstrate that "'a different result would have been probable if such error . . . had not occurred or
*(Fn. continued on next page.)*

16

necessary for a variance is tethered to a comparative showing regarding the pertinent property and surrounding properties, namely, that "the natural condition or typography of [the property] places [its owner] at a disadvantage vis-à-vis other landowners in the zoning district." (*Zakessian v. City of Sausalito* (1972) 28 Cal.App.3d 794, 800.)[11] It is thus usually improper for a variance to be granted when the pertinent property "can be put to effective use[] consistent with its existing zoning." (*Hamilton v. Board of Supervisors* (1969) 269 Cal.App.2d 64, 67.) In contrast, section 14.3.1 requires no analogous findings regarding the pertinent property's comparative disadvantage or lack of an effective use absent an eldercare facility. Appellant argues that the Commission's remarks relating to two of its negative findings -- namely, that no "unnecessary hardship" had been shown (§ 14.3.1(E)) and that the project would be injurious to the neighborhood (§ 14.3.1(E)(2)) -- mistakenly invoke the standards applicable to variances, as the Commission stated that appellant's property "[could] be put to 'effective use'

---

existed.'" (*Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1020, quoting Code Civ. Proc, § 475.)

[11] We note that under the Los Angeles Municipal Code, such comparative findings are required for a variance, in addition to the "unnecessary hardship" finding discussed above (see pt. A, *ante*). Section 12.27(D) of that code provides in pertinent part that no variance may be granted unless the zoning administrator finds: "1. that the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulations; [¶] 2. that there are special circumstances applicable to the subject property such as size, shape, topography, location or surroundings that do not apply generally to other property in the same zone and vicinity; [¶] 3. that the variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by other property in the same zone and vicinity but which, because of the special circumstances and practical difficulties or unnecessary hardships, is denied to the property in question; . . . ."

without the variance," and that appellant had not demonstrated the grounds for "a bonafide variance."

Additionally, appellant maintains the Commission improperly refused to apply section 14.3.1 on the ground that there was no showing of need for such facilities. According to appellant, in *Walnut Acres*, the appellate court determined that an applicant seeking to show that a proposed eldercare facility would "provide services to the elderly . . . to meet citywide demand" (§ 14.3.1(E)(2)) need not independently establish the current demand, as the ordinance itself reflects a legislative determination that such a demand exists. Appellant argues that the Commission's remarks in connection with its "benefit and burden" findings show that it rejected the need for new eldercare facilities, notwithstanding the legislative determination.

We conclude that appellant has shown no prejudicial error of law with respect to two of the Commission's negative "benefit and burden" findings, namely, the findings relating to excessive traffic and the project's incompatibility with the neighborhood (§14.3.1(E)(3), (E)(4)). The Commission's rationales for those findings disclose no reference to the standards applicable to variances, and as we elaborate below, no reliance on any requirement for a showing regarding the demand for eldercare facilities.

To support the finding that the project would "create an adverse impact on street access or circulation in the surrounding neighborhood" (14.3.1(E)(3)), the Commission quoted an e-mail submitted by an opponent of the project, stating: "[T]he community has to 'struggle to maintain the rural RA [zone] of our neighborhood, our residential status needs to be preserved, this commercial development, *with the traffic, parking, noise, is change that will be destructive to our investment and our neighborhoods*, [and I] disagree with [the] Tarzana

18

[Neighborhood Council], [the] eldercare facility [is] not needed, there are two elder care facilities in our neighborhood that have empty beds.'" (Italics added.)

Viewed in context, the quotation from the e-mail establishes no material defect in the finding. As the trial court noted, the administrative record contains evidence establishing that the project would generate 415 new daily car trips, including 56 daily trips during peak hours. Furthermore, the italicized portion of the e-mail directly supports the Commission's finding, as it constitutes evidence that project opponents regarded the traffic increase as harmful to the neighborhood. In our view, the e-mail's reference to other matters unrelated to traffic -- namely, the opponent's desire to preserve the neighborhood, and belief that the proposed facility was unnecessary -- cannot reasonably be regarded as showing that the Commission relied on improper standards in assessing the project's potential impact on traffic.[12]

Furthermore, to support the finding that the project would be incompatible with the neighborhood (§ 14.3.1(E)(4)), the Commission stated: "[T]his is a low density neighborhood and the [proposed] use is not compatible with its surroundings[;] this use will impact the property rights of those who wish to keep equine[s], [the] size and scale of the project is not in character, it would change the character of the area, and the use will result in too many vehicle trips." As the administrative record contains the plans for the project, photographs and maps of the neighborhood, responses from opponents regarding the project's impact on the

---

**12**      Appellant contends that under *Topanga I*, the e-mail quotation was insufficient to explain why the Commission concluded that increase in traffic was excessive. However, as discussed above (see pt. A, of Discussion, *ante*), *Topanga I* did not oblige the Commission to provide such explanation and, as noted,
*(Fn. continued on next page.)*

19

neighborhood, and a traffic study, there is sufficient evidence to support the Commission's determinations, which disclose no reliance on improper standards.[13]

Appellant contends the "incompatibility" finding is founded on an improper rejection of the need for eldercare facilities, pointing to the following remark by the Commission, which occurs in the context of the "incompatibility" finding: "The City . . . has had an 'organic growth' to 'needs met' ratio.  It has not needed an eldercare facility ordinance to achieve this."  The record discloses that those remarks were intended to reject a specific "unnecessary hardship" finding by the zoning administrator that he elected to state within the section of his decision addressing the project's compatibility with the neighborhood.[14]  The Commission's decision tracks the structure of the zoning administrator's decision, and thus rebuts that "unnecessary hardship" finding in the section addressing the Commission's "incompatibility" finding.  Because the Commission's remarks target an issue collateral to, and independent of, the project's incompatibility with the neighborhood, they establish no defect in the Commission's "incompatibility" finding.  In sum, appellant has failed to show reversible error in the Commission's decision.

---

appellant does not challenge the sufficiency of the evidence to support the Commission's findings.

[13]     Pointing to *Topanga I,* appellant contends the Commission's determinations were insufficiently detailed to explain why the physical characteristics of the proposed "use" were incompatible with the neighborhood.  Again, as discussed above (see pt. A, of Discussion, *ante*), *Topanga I* imposed no obligation on the Commission to provide such details.

[14]     The finding in question was that a "practical difficulty and unnecessary hardship [would be] caused by strict application of" the Baseline Mansionization Ordinance (L.A. Ord. No. 179,883), which regulates the floor area of single-family residences.

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs.

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

CERTIFICATION FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEVI FAMILY PARTNERSHIP, L.P., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B257764 <br> (Los Angeles County <br> Super. Ct. No. BS143091) <br><br> ORDER CERTIFYING <br> OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:*

The opinion in the above-entitled matter, filed on September 16, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

There is no change in judgment.

_____

* WILLHITE, Acting P. J.                                   MANELLA, J.,