Filed 5/17/17; pub. order 5/23/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CAROLYN KUTZKE et al., | D070288 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2015-00014564-CU-EI-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Reversed and remanded.

Jan I. Goldsmith, City Attorney, and Glenn T. Spitzer, Deputy City Attorney, for Defendant and Appellant.

Thorsnes Bartolotta McGuire, Vincent J. Bartolotta, Jr., and Karen R. Frostrom, for Plaintiffs and Respondents.

# I

## INTRODUCTION

Carolyn Kutzke and Karen Kapp (owners) applied to the City of San Diego (City) for a vesting tentative parcel map and related permits to allow them to subdivide two adjacent lots totaling 1.45 acres (property) into four lots, retain an existing residence on one lot, and build a new residence on each of the remaining lots (project).

The local community planning board recommended denial of the project; however, the planning commission approved it and certified a mitigated negative declaration for it. A citizen appealed the planning commission's decision to the City council. The City council granted the appeal and reversed the planning commission's decision, finding the project's mitigated negative declaration was inadequate, particularly as to the project's potential impacts on geology, land use, and public safety; the project was inconsistent with the applicable community plan; and requested deviations from applicable development regulations were inappropriate for the project's location and would not result in a more desirable project.

The owners petitioned for and obtained a mandamus judgment from the superior court reversing the City's decision. The City appeals. We reverse the superior court's judgment because we conclude there is substantial evidence to support the City's findings.

## II

## BACKGROUND

### A

The property is located on a hilltop near the southern end of the Point Loma peninsula and is in the La Playa neighborhood of the Peninsula Community Plan area.[1] According to the Peninsula Community Plan, the La Playa neighborhood "is characterized by large single-family homes of various ages and architectural styles, including colonial, Spanish and contemporary designs." The "neighborhood is heavily vegetated with a variety of large trees and shrubs that add to the beauty and exclusiveness of the area." Among the goals and objectives of the Peninsula Community Plan are conserving the character of existing single-family neighborhoods, including the very low density character of certain neighborhoods such as La Playa, and encouraging the compatibility of infill housing design with existing residential development.

According to a historical resources technical report, the property is currently the site of "a two-story residence in the Tudor Revival architectural style that was constructed in 1929 and remodeled with a new front porch in 1961. Other structures on the site include the 1929 garage to the north of the residence, a former garage, now guesthouse, northeast of the residence and a former stable, now shop, south of the

---

1     We previously granted the City's unopposed motion for judicial notice of the Peninsula Community Plan and San Diego Municipal Code (SDMC) sections 125.0440, 126.0504, and 126.0708. We also grant the owners' unopposed motion for judicial notice of the City's California Environmental Quality Act (CEQA) significance determination thresholds, the City's sustainable building policy, and SDMC sections 126.0504, 143.0915, and 143.0920. (Evid. Code, §§ 452, subd. (b), 459, subd. (a))

residence."  Master architect, Ralph L. Frank, designed the original 1929 residence and the 1961 front porch.  Joseph E. Jessop Sr., a prominent figure in San Diego history, lived in the residence from 1929 to 1996.[2]

The project would subdivide the property's two existing lots into four lots.  Lot 1 would be 24,088 square feet and would be improved with a new 2,620-square-foot residence, an attached two-car garage and two surface parking spaces.  Lot 2 would be 10,141 square feet and would be improved with a new 3,179-square-foot residence, an attached two-car garage and two surface parking spaces.  The residences on lots 1 and 2 would be clustered together with 12 feet of separation.

Lot 3 would be 15,461 square feet and would remain improved with the existing residence, which is eligible for designation as a local historic resource.  The existing detached garage would be demolished and four surface parking spaces would be provided instead.  Lot 4 would be 13,380 square feet and would be improved with a new 3,883-square-foot residence, an attached two-car garage and two surface parking spaces.

The four lots would share a private driveway.  The slope of the driveway would be too steep for fire trucks to access the property.[3]  However, the project would include the

---

[2]     The report states Jessop's civic contributions and accomplishments include "the founding of the San Diego Maritime Museum and the acquisition of the Star of India; founding of the Downtown Association and San Diegans Incorporated in the 1950s, which worked to revive the struggling downtown business districts through revitalization projects such as the Civic Concourse; advocating for the expansion of City College; serving as National Director of the Navy League; and serving on the committee that planned and developed Mission Bay park."

[3]     It is not clear from the record whether emergency vehicles other than fire trucks could access the property.

installation of standpipes near the furthest three residences, which would provide fire personnel with direct access to water connections in an emergency. The project would also include a standard fire connection at the property line adjacent to the public street and the residences would be equipped with sprinkler systems.

B

SDMC section 143.0910 allows affordable housing, infill housing, and sustainable building projects to request deviations from applicable development regulations provided certain findings are made. The project qualifies as a sustainable building project because it will use photovoltaic panels to generate 50 percent of the residences' electricity needs.

The project deviates from applicable development regulations in three respects. The residence on lot 1 deviates from SDMC section 131.0443(a)(2), which requires a minimum rear yard setback of 20 feet. The residence on lot 1 would only have a six-foot rear yard setback. The residences on lots 2, 3 and 4 deviate from SDMC section 144.0211(a)(2), which requires a minimum street frontage of 65 feet per lot. The residences on lots 2, 3, and 4 would not have any street frontage. Instead, they would be accessed through the shared private driveway and, because of the driveway, they would not have front or rear yards. The residence on lot 3 deviates from SDMC 142.0340(d)(1), which allows a side yard retaining wall to be a maximum of six feet high. The side yard retaining wall for lot 3 would be eight feet high.

C

To comply with CEQA, the City conducted an initial study of the project's potential environmental impacts. (Cal. Code Regs., tit. 14, § 15063.) The initial study

identified only one potentially significant impact. Specifically, the initial study concluded the grading for the project could result in a significant impact to paleontological resources, but mitigation measures agreed to by the owners would reduce the impact to below a level of significance. Consequently, the initial study indicated the City would prepare a mitigated negative declaration for the project. (Pub. Resources Code, §§ 21064.5, 21080, subd. (c)(2); Cal. Code Regs., tit. 14, § 15070, subd. (b).)

In evaluating the project's potential impacts on geology, the initial study indicated the project would have less than a significant impact. As support for this conclusion, the initial study stated "the project would be required to comply with proper engineering design, in accordance with the California Building Code, utilization of appropriate engineering design measures and standard construction practices. These measures would [be] verified at the building permit stage, to ensure that potential for impacts from geologic hazards would be less than significant."

In evaluating the project's potential impacts on land use, the initial study indicated the project would not have any impact on any applicable land use plan. As support for this conclusion, the initial study stated the project was consistent with the existing zoning applicable to the property and was consistent with the surrounding residential uses.

In evaluating the project's potential impacts on public services, the initial study indicated the project would have less than a significant impact on fire protection. As support for this conclusion, the initial study stated, "The project site is located in an urbanized and developed area where fire protection services are already provided. A four-lot subdivision and subsequent construction of three single-dwelling units would not

6

adversely affect existing levels of fire protection services to the area, and would not require the construction of new or expansion of existing governmental facilities."

D

The local community planning board recommended denial of the project based on concerns about fire safety, fire truck access, density, and the appropriateness of the requested deviations. However, the planning commission approved the project, including certifying a mitigated negative declaration for the project.

A citizen appealed the planning commission's decision to the City council. Among the grounds for the appeal, the citizen asserted the project conflicted with the Peninsula Community Plan and other applicable land use plans, the project's design was incompatible with the neighborhood, the project would compromise the historical significance of the existing residence, the project allowed development on a geologically unstable hillside and cliff, and the project did not provide adequate access for fire trucks and ambulances.

After conducting a public hearing on the matter, the City council reversed the planning commission's decision to approve the project and certify the mitigated negative declaration. The City council found the project's mitigated negative declaration was inadequate, particularly as to the project's potential impacts on geology, land use, and public safety; the project was inconsistent with the Peninsula Community Plan; and the

requested deviations were inappropriate for the project's location and would not result in a more desirable project.[4]

The owners filed a complaint in superior court alleging causes of action for violation of their civil rights, inverse condemnation, mandamus, and nuisance. The parties subsequently stipulated all of the claims in the complaint would be addressed in a proceeding for writ of mandamus (Code Civ. Proc., § 1094.5). After hearing the matter, the court found there was insufficient evidence to support the City's findings and entered a judgment reversing the City's decision.

III

DISCUSSION

A

"Because this matter came to the trial court on a petition for a writ of mandate under Code of Civil Procedure section 1094.5, that court was required to determine whether substantial evidence supported the [City's] findings and whether those findings supported its decision. [Citation.] Our role is identical to that of the trial court. [Citations.] In determining whether substantial evidence supports the [City's] decision, we look to the 'whole' administrative record and consider all relevant evidence, including that evidence which detracts from the decision. Although this task involves some

---

[4] The owners state in their appellate brief, "The Planning Commission decision was appealed to the City Council without a shred of new evidence." However, the record contains documents and testimony presented to the City council that were not presented to the planning commission. Regardless, the owners have not provided any authority indicating the City council lacks the power to reverse a planning commission's decision unless the City council has new evidence to support the reversal.

8

weighing to fairly estimate the worth of the evidence, that limited weighing does not constitute independent review where the court substitutes its own findings and inferences for that of the [City]. Rather, it is for the [City] to weigh the preponderance of conflicting evidence, as we may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it." (*Kirkorowicz v. California Coastal Com.* (2000) 83 Cal.App.4th 980, 986; accord, *Doe v. Regents of the University of California* (2016) 5 Cal.App.5th 1055, 1073–1074.)

B

Among the requirements for the City to approve the project, the project had to be consistent with the Peninsula Community Plan and not be detrimental to public health, safety, and welfare. The project also had to comply with applicable land use regulations, and any proposed deviation from the regulations had to be appropriate for the project's location and result in a more desirable project than would be achieved if designed in strict conformance with the regulations. (SDMC §§ 125.0440, subd. (a), (b), & (e), 126.0504, subds. (a)(1)–(3) & (m)(3), 126.0708, subd. (a)(3).)

The City denied approval of the project because it could not make these findings and instead found the project was inconsistent with the Peninsula Community Plan, the proposed deviations were inappropriate for the project's location and would not result in a more desirable project, and the project would be detrimental to public health, safety, and welfare. The City also found the project's mitigated negative declaration was inadequate, particularly as to the project's potential impacts on geology, land use, and public services. We must uphold the City's decision if any one of the City's findings is supported by

9

substantial evidence.  (*Levi Family Partnership, L.P. v. City of Los Angeles* (2015) 241 Cal.App.4th 123, 130; *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 176, *Saad v. City of Berkeley* (1994) 24 Cal.App.4th 1206, 1213–1214.)

Regarding the project's consistency with the Peninsula Community Plan, the City's finding need not be supported by expert evidence.  "[T]he opinions and objections of neighbors can provide substantial evidence to support rejection of a proposed development."  (*Breneric Associates v. City of Del Mar*, *supra*, 69 Cal.App.4th at p. 177; *Harris v. City of Costa Mesa* (1994) 25 Cal.App.4th 963, 973.)  The record contains many such opinions and objections, primarily focused on the positioning of the residences and their significantly reduced setbacks in comparison to the surrounding community.  The record also contains expertly prepared renderings of the project and photographs of the surrounding neighborhood.  The renderings and photographs lend credence to the neighbors' opinions and objections because they illustrate the contrast between the project's closely spaced residences with minimal setbacks and the surrounding neighborhood's more generously spaced residences with large setbacks. Collectively, this evidence supports the City's findings the project is inconsistent with the Peninsula Community Plan, particularly the plan's goals of conserving the character of existing single-family neighborhoods and encouraging the compatibility of infill housing design with existing residential development.  This evidence likewise supports the City's findings the project was not appropriate for its location, the proposed deviations would not result in a more desirable project, and the mitigated negative declaration inadequately addressed the project's impacts on land use.

Regarding the project's impact on public health, safety, and welfare, the record contains expert evidence showing there are flaws and omissions in the project's geotechnical report that cast doubt on the report's conclusion the project can be safely built on a steep sandstone hillside. In addition, the record contains expert evidence showing the configuration of the residences and the steepness of the shared private driveway would present significant challenges for fire and emergency services personnel, even with the proposed standpipe and sprinkler systems. This evidence supports the City's findings the project would be detrimental to public health, safety, and welfare. This evidence also supports the City's findings the project was not appropriate for its location, the proposed deviations would not result in a more desirable project, and the mitigated negative declaration inadequately addressed the project's impacts on geology and public safety.

Although the owners assert the evidence submitted against the project is markedly less persuasive than the evidence submitted in favor of the project, weighing conflicting evidence is within the City's purview and the City disagreed. Since the owners have not established no reasonable municipality could have reached the same decision as the City, we must uphold the City's decision. "[I]t is '*not* the role of the courts to micro-manage these development decisions. Our function is simply to decide whether the city officials considered the applicable policies and the extent to which the proposed project conforms with those policies, whether the city officials made appropriate findings on this issue, and whether those findings are supported by substantial evidence.' " (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317.)

11

IV

DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to enter a new judgment denying a writ of mandate.  The City is awarded its appeal costs.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


DATO, J.

Filed 5/23/17

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CAROLYN KUTZKE et al., | D070288 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2015-00014564-CU-EI-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 17, 2017, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

Copies to:  All parties